# Gilmore *v.* Philadelphia Rapid Transit Company.

*Negligence—Street railways—Wagon—Collision — Contributory negligence—Case for jury—Damages—Measure of damages—Profits of business—Services of minor son—Evidence.*

1. In an action against a street railway company to recover damages for personal injuries sustained in a right angle collision at midnight between a one-horse wagon driven by plaintiff and one of defendant's cars, the case is for the jury and a verdict and judgment for the plaintiff will be sustained where plaintiff testified that just before attempting to cross the track on which he was struck he looked in the direction from which the car came, and saw it about 300 feet away, that his horse was at the time walking at the rate of two and a half miles an hour, that the car approached at a terrific speed and struck the wagon on the rear of the hub of the front wheel, throwing plaintiff out and causing the injuries complained of.

2. In such case where plaintiff's testimony as to the points where he looked before going on the track was slightly confused, his reiterations that he made an observation a few feet from the track on which he was struck, justifies a finding that he looked immediately before driving upon the track.

3. In such case defendant's contention that plaintiff's testimony presented a mathematical impossibility cannot be sustained where plaintiff testified that the car was "about" at certain points, that it was midnight when the accident occurred, that the car approached with glaring headlights and at a minimum speed of 25 miles an hour, so that it was not possible that the plaintiff could have seen to a nicety just where the car was at any given time.

4. In an action brought by a man who is in business for himself to recover damages for personal injuries, the measure of damages is the expense plaintiff was put to in his business, if any, and it is proper for the court to charge that if before the accident plaintiff had employed a helper at a certain amount per month and thereafter employed him at the same price, and plaintiff was not put to

any additional expense as a result of the accident, he lost no money on that account.

5. In certain instances where one as a result of injuries received through the negligence of another has been entirely deprived of the power to carry on a business in which his personal labor and superintendence were the major assets, or where one had died as the result of his injuries, and the evidence showed regular sums given his family which were earned in the business which consisted principally of his labors and management, evidence has been permitted concerning the net earnings of the injured or deceased person on the theory that it is the only way, under such circumstances, satisfactorily to show earning power. The general rule, however, is that profits derived from an investment or management of a business enterprise are not earnings and therefore the profits of a business which one is connected with cannot be made use of as a measure of his earning power.

6. In such case where it appeared that plaintiff a year and a half after the accident put his minor son to work to assist him as well as continuing the services of another helper who had been in his employ since before the accident, plaintiff could not recover the value of his son's services in the absence of a demonstrated earning power on his part, the fruits of which the plaintiff had enjoyed, and the court did not err in so charging the jury.

7. It was not reversible error for the trial judge in such case to charge the jury that, if they believed, but for the accident, plaintiff would have been able to do his regular work, and with the boy's help could have dispensed with the services of his hired man, they might consider, in estimating the damages, the money plaintiff was obliged to pay the man.

Argued March 20, 1916. Appeal, No. 443, Jan. T., 1915, by plaintiff, and Appeal, No. 458, Jan. T., 1915, by defendant, from judgment of C. P. No. 3, Philadelphia Co., Jan. T., 1911, No. 3359, on verdict for plaintiff in case of Robert A. Gilmore v. Philadelphia Rapid Transit Company. Before BROWN, C. J., MESTREZAT, POTTER, MOSCHZISKER and FRAZER, JJ. Affirmed.

Trespass to recover damages for personal injuries. Before FERGUSON, J.

The facts appear by the opinion of the Supreme Court.

Verdict for plaintiff for $1,750.    Plaintiff and defendant appealed.

*Errors assigned,* among others, were in refusing defendant's motion for judgment n. o. v., various rulings on evidence, and the charge of the court.

*William W. Porter,* with him *James A. Walker,* for Robert A. Gilmore.

*William M. Stewart, Jr.,* for Philadelphia Rapid Transit Company.

OPINION BY MR. JUSTICE MOSCHZISKER, May 8, 1916:

This case arises from a collision which occurred a few minutes after midnight of July 24, 1909, between a trolley car of the defendant company and a one-horse wagon driven by the plaintiff, at the intersection of Chew street and Chelten avenue, in the City of Philadelphia. The verdict favored the plaintiff; judgment was entered thereon, and the defendant has appealed, contending that, on the evidence, it is entitled to judgment notwithstanding the verdict. The other side also has appealed, and contends that the trial judge erred in certain rulings on the evidence and in parts of his charge, to the prejudice of the plaintiff in the amount of the verdict.

At the point of the accident, Chelten avenue is 80 feet wide, from house-line to house-line, and two tracks of the defendant company are located thereon; it runs at right angles to Chew street (also 80 feet wide), upon which the plaintiff was driving northward. The distance from the house-line on the south side of Chelten avenue to the first rail of the west-bound track is 41½ feet, being the width of the sidewalk, 15.7 feet, the space between the curb and first rail of the east-bound track, 16.15 feet, the width of that track, 5.19 feet, and the space between the two tracks, 4.5 feet. The car which ran into the plaintiff's wagon was on the west-bound track, and the plain-

tiff testified that, when he reached Chelten avenue, he looked to the east and saw this car "at about Boyer street" (676 feet away); that when he "attempted to cross the street" the car had "reached Bloyd street" (about 300 feet away); that he "had looked" when his "team" was "going on" the west-bound track; later, he said the car was at Bloyd street when his "team" was about "going on" the "west-bound track," and then, that, when he "next observed the car," after his original observation at Boyer street, he "was on the track, going across the track"; but, he evidently meant that he was on the first track, not the one upon which the collision occurred, for he subsequently stated that, when he "was leaving the east-bound track," he observed the car "at about Bloyd street." On cross-examination he testified that, when he saw the car at Bloyd street, his horse was "going at a walk on the west-bound track, leaving the east-bound track and going to the west-bound track"; then, in answering another question, he immediately thereafter said that the front wheels of his wagon "would be partly occupying the east-bound track, partly, because the length of the horse would take him to the west-bound track." The horse was walking at about 2½ miles per hour, and the car, which was coming at what one of the witnesses designated as "lightning" and another as "terrific" speed, struck the wagon in the "rear of the hub of the front wheel."

On the answer last quoted, counsel for the defendant bases an argument that the plaintiff must have actually been on the west-bound track before he took his second observation, and, upon this supposed fact, he contends that, since the plaintiff did not look just before entering that track, he was so clearly guilty of contributory negligence that the point should be ruled against him as a matter of law. There may be a slight confusion in the testimony, but, when the examination is taken as a whole, it clearly justifies a finding that the plaintiff looked immediately before driving upon the west-bound track.

Though he did say, "I was going at a walk on the west-bound track," yet it will be observed that he immediately added he was then "leaving the east-bound and going to the west-bound track"; further, it will be noted that, while he next suggests his horse might have been on the west-bound track when he looked the second time, yet that was but inference, and not a positive statement that the horse was there.  As against this, we have his re-iterated assertion that his second observation was made when his horse "was going off the east-bound track," was "leaving the east-bound track," and other words to that effect.

It is admitted by the defendant that its alleged negligence was an issue for the jury, and, since the verdict favored the plaintiff, that point, for present purposes, must be taken as definitely determined against the former.  The sole contention here is that the evidence shows the plaintiff guilty of contributory negligence as a matter of law; but, of course, unless no inference other than this is reasonably possible, that issue was one for the jury to pass upon; and, as we have endeavored to demonstrate, the testimony, when viewed as a whole, does not plainly indicate contributory negligence by the plaintiff.  As to the contention that the plaintiff's testimony, even when construed in the light most favorable to him, presents a mathematical impossibility, we cannot so view it; for the plaintiff did not attempt to say the car was exactly at Boyer street when he took his first observation, or precisely at Bloyd street at the time of his second look; on the contrary, he repeatedly stated that the car was "about" at those points.  It was midnight, and the car with its flaring headlight was approaching the plaintiff at a minimum speed of 25 miles an hour; so it is not possible that he could have seen to a nicety just where it was located at any given time.  Finally, in addition to taking the stand himself, the plaintiff called a number of witnesses, and one of these testified that the wagon was "just leaving the south curb of Chelten

avenue" when the car was at Bloyd street. We see no merit in the defendant's assignments of error; they are overruled.

We shall now consider the other appeal. The plaintiff was a "commercial florist," and the major portion of his business was "wholesale"; it was conducted on a plant covering 10 acres of ground, with 5,650 square feet under heated glass and over 1,000 square feet in cold frames; his annual expense amounted to about $2,500, and before the accident he employed one man to assist him; afterwards he kept this man, and also placed his minor son at work in the business, which still continued under the plaintiff's general supervision; he estimated the personal labor performed by himself before the accident at $480 per annum, and testified that since his injuries he performed probably 20 per cent. of his prior work, giving in detail just what kind of work he had been and was now able to do. The plaintiff offered to prove his receipts and expenditures "covering the period of years immediately anterior to his injury......and for the years subsequent thereto, in order to show decreased earning power"; this was accompanied by a further offer to show that the plaintiff leased the premises occupied by him in his business, that he had no capital invested other than the money required to purchase seeds, etc., "which he matured......and sold by his own labor with the assistance of a hired employee," and that he had no other business or occupation. These offers were refused. He then offered to show, by qualified witnesses who "knew Mr. Gilmore's business," that "the work performed" by him in connection therewith was worth between $1,500 and $2,000 a year; this also was refused.

It will be observed that the original offer was not to contrast a defined period of time before the accident with one of like duration thereafter, and that there was no specific offer to prove that the alleged decrease in the earnings of the plaintiff's business was due exclusively to his impaired physical condition; furthermore, there

was no contention that the plaintiff was so enfeebled that he was entirely unable to work in or superintend his business, or that it had come to a stop. On the contrary, it appears that, while the plaintiff was in a bad nervous condition, he was otherwise physically fit, and that the business remained a running concern. On this state of facts, the trial judge charged: "A man's business which goes on after he is hurt may have success or it may have disaster for other reasons than the accident. If he has a plant, no matter if it is a small plant, in which he raises flowers, it involves the buying of bulbs and stock and it involves the question of freeze out in winter and blight and other things which sometimes make a season disastrous, although otherwise it would look very promising. A man's labor enters into that business as well as his stock, and the fact that in one year he has a good year and in another year he has a bad year may be the result partly of bad business conditions and partly of conditions affecting his health. It is impossible to split them, and the law wisely says that we cannot consider the results to the man's business, if it is a business that goes on and if it is a business in which he could employ somebody else to do his work. In my view of the case, owing to the fact that Mr. Gilmore carried on his business until to-day, and could employ help to do what he could not do himself, the cost of the help would be something which could be considered, and not what was the effect ultimately upon his business as shown by yearly statements. As I say, I struck out all that evidence, and therefore the only thing you could consider would be what expense he was put to in his business, if any. There was evidence that for a time, if not all the time, before the accident he employed a man to help him at a cost of $50 a month, and he employed a man to help him after the accident at the same price. If the accident caused no change in his business, he was not put to the expense of the man as a result of the accident, and hence he lost no money on that account." The before men-

tioned rulings and above quoted instructions are complained of by the plaintiff.

In certain instances where one, as the result of injuries received through the negligence of another, had been entirely deprived of the power to carry on a business in which his personal labor and superintendence were the major assets, or where one had died as the result of his injuries, and the evidence showed regular sums given his family which were earned in a business that consisted principally of his labors and management, we have permitted evidence concerning the net earnings of the injured or deceased person, on the theory that it was the only way, under the peculiar circumstances of the case, satisfactorily to show earning power; but those were exceptional cases which, as we recently said in Boggess v. Balto. & Ohio R. R. Co., 234 Pa. 379, 388, "were not intended as departures from the general rule" laid down in Goodhart v. Penna. R. R. Co., 177 Pa. 1, 15, 16, that "profits derived from an investment or the management of a business enterprise are not earnings," therefore "the profits of a business with which one is connected cannot be made use of as a measure of his earning power," adding, "such evidence may tend to show the possession of business qualities, but it does not fix their value." Under the circumstances of the case at bar, we see no error in the rulings and instructions called to our attention in the assignments just discussed.

The last specification of error goes to the matter covered by the following excerpt from the charge: "Then there is evidence that he put his boy into the greenhouses, after a year and a half or a year or two. The father is entitled to the boy's earnings; he is entitled to the boy's services. When the boy goes to work the father is entitled to have his work, and, if he chose to put the boy in the greenhouse, he had a right to do it, but he cannot ask you for the value of the boy's services. In the first place, we have no evidence as to what the value of the boy's services would be, but he could not ask for the value of

the boy's services, and therefore the only thing you could consider is whether or not, due to the accident, at any time since the accident, the boy was doing what the man would have been doing before the accident, and Mr. Gilmore was paying for the services of a man which he might not otherwise have to pay for." If the plaintiff's son had a demonstrated earning power, the fruits of which the father had previously enjoyed, this case might, possibly, present a different aspect; but we have no such state of facts. Here the boy was removed from school in order to assist his parent, and the father paid him no wage or compensation, nor was there anything to indicate the reasonable worth of his services. The trial judge went as far as he well could when he suggested to the jury that, if they believed, but for the accident, the plaintiff would have been able to do his regular work, and with the boy's help could have dispensed with the services of his hired man, they might consider, in estimating the damages, the money which Mr. Gilmore was obliged to pay that man. We see no merit in this assignment, and it is overruled.

The judgment is affirmed.