Marshall, C. J.
On May 21,1917, LoSehiavo was driving a truck on the streets of the city of Akron, where his truck was struck by one of the cars of the traction company, whereby he was severely injured. Upon suit being brought in the courts of Cuyahoga county on the ground of the alleged negligence of the traction company, a verdict was recovered in the sum of $25,000. While negligence was denied in the answer of the traction company, and while it was further claimed that the injuries were the result of plaintiff’s own negligence, no legal questions are urged in this court upon the admission or rejection of evidence upon the question of negligence or contributory negligence, and, inasmuch as counsel recognize the fact that this court will not weigh the evi *63 dence, no questions have been argued in this court as to the amount of the verdict or the correctness of the jury’s findings upon the question of negligence under the instructions of the court as given. It is argued, however, that the court erred in the admission of certain evidence bearing upon the manner of estimating plaintiff’s damages and in the charge covering the evidence so submitted.
It was alleged in the petition that six months prior to the time of the accident plaintiff started in the automobile trucking and fruit business, and was so engaged up to the time of his injury, and was earning on an average of $700 per month, but that as á result of his injury he became unable to perform any work and that his loss of earnings up to the time of filing the petition on December 14,1918, was $6,000, and it was further alleged that during the remainder of his life ’his injuries would greatly diminish his earning capacity. It was further alleged that large sums had been expended for medical services and for damages to his truck, and judgment was prayed in the sum of $75,000.
At the trial, the evidence disclosed that plaintiff began business while a youth of tender years, by buying and selling fruit and other produce, and that later in life he entered into a partnership with his brothers in the same business in the operation of a commission house in the market district of Cleveland; that plaintiff also had a wagon route covering the west side of the city of Cleveland, in dealing with the grocers of that locality. In 1915 he purchased a 2-ton truck and began hauling produce for another commission house in Cleveland, and employed a man to drive his horse and wagon while *64 he himself operated the 2-ton truck. Later, in February, 1917, he bought a 5-ton truck and employed a driver for the small truck and a helper for the big truck, thereby having three employes in his service, and owning one horse and wagon, one small truck and one large truck, in addition to such other working capital as would be necessary in operating such business, the amount of which does not appear in the record. Plaintiff was a very industrious man and devoted fifteen or sixteen hours a day to his business. The large truck was used in long-distance hauling between Cleveland and Akron, he having a line of customers in both of those cities. He hauled produce and meats from Cleveland to Akron and hauled rubber tires and other merchandise from Akron to Cleveland, making one trip each day. The testimony showed that he gave close personal attention to each of the branches of his business.
The principal complaint made in this case is the introduction of evidence relative to - profit earned by plaintiff during the few months prior to the accident, from February, 1917, to May 21, 1917. This testimony was as follows:
“Q. Now, then, Frank, what capital had you invested in your business? A. About $4,800 to $5,-000.
“Q. Did that include both your trucks? A. That is what I had, the money, cash in it.
******
“Q. Now, Frank, will you tell the jury, as nearly as you can, what was the average income of your business per day from February, 1917, up until the 21st of May, 1917 ? * * * From all your business, *65 from both trucks and from your fruit business ? A. About $85 per day.
“Q. Eighty-five dollars per day. Now, in that $85 a day, Erank, what did you pay out in the way of expenses, including all expenses, and also taking into consideration depreciation of the vehicle and equipment that you had? * * * Yes. What would you pay out of that amount of money? A. About $35 a day,” and continuing the answer, “it would perhaps be sometimes more and sometimes less.”
This testimony was objected to, objection overruled, and exception noted.
Thereafter in charging the jury the court gave the following instruction-: “And in arriving at a proper measure of recovery * * * addressing yourselves to these several circumstances, gentlemen, you may add another, namely: it appears in the evidence that the plaintiff was engaged in business in the course of which he used trucks as instrumentalities for carrying on his business. Some evidence has been offered tending to show loss by him in the course of his business. I say to you this, upon that subject, gentlemen, that interest upon investment, or profit resulting from investment, cannot be the subject of a recovery. If, however, the business was superintended, or managed, by the plaintiff in person, and if his superintendence or management ceased because of these injuries, then you may take that into account in determining what damages plaintiff may be entitled to recover, not as profit or interest upon investment but simply in so far as the plaintiff’s inability to conduct his business resulted directly in financial loss to himself.”
*66 The court of appeals found that the court of common pleas erred in permitting the above-quoted evidence to be introduced, and that the trial court further erred in its instruction to the jury upon the subject of profits, and therefore reversed the judgment and remanded the cause for new trial. In the journal entry in the court of appeals it was stated that the judgment was reversed for reasons stated in the opinion. In the opinion the court of appeals discussed a number of authorities and finally reached the conclusion that the better rule for estimating the plaintiff’s loss is that stated in Wynne v. Atlantic Ave. Rd. Co., 35 N. Y. Supp., 1034, to-wit, that one injured by the negligence of another can recover for loss of time or earning capacity upon proof of his business, its extent, the particular part transacted by him and the compensation paid to persons doing such business for another.
It is not contended on the part of anyone that this case contains any of the elements which call for the assessment of punitive or exemplary damages, but that on the contrary it is a proper case for only compensatory damages, and the only question for consideration and determination is whether or not the testimony on the subject of the profits and expenses of plaintiff’s business was properly admitted and the jury were properly instructed upon that question.
The authorities are uniformly to the effect that even in those cases where the profits of a business may be shown in evidence and considered by the jury as a measure of damages the jury must be carefully instructed to avoid speculative or conjectural profits.
*67 On the other hand, in an action for damages for personal injury, the authorities uniformly hold that loss of profits, as such, is nowhere recognized as a measure of damages. This principle grows out of the very nature of the subject. We should not lose sight of the distinction between profits and earnings. Lexicographers and law dictionaries declare that profit is the advantage or gain resulting to the owner of capital from its employment in any undertaking; the excess of the selling price over the original cost of anything; acquisition beyond expenditure; the gain resulting to an employer from the labor of persons employed by him. Earnings represent that which is gained or merited by labor, service or performance ; reward, wages, or compensation for personal effort.
The authorities are therefore in accord upon the proposition that in actions for injuries to property, or business, or trade, compensation must be made for the loss of the use of the property, or, in some instances, for the loss of the profits, but that in actions for personal injuries the basic principle is compensation for loss of personal earnings, that is to say, the loss of the power to earn.
The able and diligent efforts of counsel have pointed out the confusion which exists among the authorities upon these questions and the necessity for a rule in Ohio to govern the trial of cases similar to the instant case. It is indeed startling to discover that after the lapse of one hundred and twenty years from the time of the organization of this state not a single case has been reported by this court which will throw any light upon the legal question involved. It may be strongly suspected either that *68 many similar cases have been decided without report or that motions to certify have been overruled. It is even more startling to observe that in many •jurisdictions which have dealt with the question, the rules attempted to be announced have only resulted in causing even greater confusion. Text-writers have never seriously attempted to evolve a uniform rule from the authorities, but have contented themselves with digesting the contradictory cases, and have many times used language showing a failure to grasp the principles involved.
In the face of such confusion in the authorities, it is questionable whether anything is to be gained by entering upon a discussion of them. Certain cases decided in the states of New York and Pennsylvania fully sustain the contentions of the defendant, to-wit, Masterton v. Village of Mount Vernon, 58 N. Y., 391, 396; Weir v. Union Ry. Co., 188 N. Y., 416, 418; Goodhart v. Pennsylvania Rd. Co., 177 Pa., 1, 14, 15, 16, and Gilmore v. Philadelphia Rapid Transit Co., 253 Pa., 543. But it must be admitted that there is some inconsistency among the cases decided by the courts of New York state, and it is also found that the rule has been changed time and again in the state of Pennsylvania.
On the other hand, many cases support the contentions of the plaintiff, the leading one, perhaps, being C., R. I. & P. Ry. Co. v. Posten, 59 Kans., 449. Other cases are: Heer v. Warren-Scharf Asphalt Paving Co., 118 Wis., 57; Mitchell v. C., R. I. & P. Ry. Co., 138 Ia., 283; Shaw v. So. Pac. Rd. Co., 157 Cal., 240, and Singer v. Martin, 96 Wash., 231.
All respectable authorities agree that in personal injury cases it is competent and proper to show the *69 nature and extent of the business and the part plaintiff transacted in it. The authorities generally agree, likewise, that in an action for personal injury recovery shall be confined to loss of earning power as distinguished from the profit of the business in which plaintiff was engaged; and this is true no matter how prominent his part in it, or how essential to its successful operation his connection with it. The authorities are also in harmony upon the proposition that in personal injury suits the loss of profits of the business in which he is engaged is not a proper measure of his damages. The authorities are only divided upon the question whether in estimating the loss or impairment of earning power the jury are entitled to the benefit of evidence of the net profits of the business in addition to evidence of the nature and extent of the business and the part plaintiff transacted in it.
If all personal injury cases were surrounded by the same circumstances, it would not be difficult to formulate a set of rules to govern their trial, which would cause all litigants to approve their wisdom and to feel that justice was being done. A special rule cannot, however, be made for every conceivable set of circumstances, because no treatise would be large enough to contain them and no mind ingenious enough to conceive all the possible exigencies of human affairs. Neither can it safely be left to the trial judge in each instance to formulate a rule to govern the case on trial; nor can it be left to the jury’s innate sense of justice to render a verdict without rules or guidance. It must further be conceded to be inevitable that any general rule will work individual hardships and that some verdicts will *70 seem too large and others too small, and yet our system of jurisprudence is based on general rules, and experience has demonstrated the wisdom of the system. Throughout all the authorities, where damages are sought to be recovered, whether for injuries to property, or business, or trade, or for personal injuries, there is a clear recognition that the question of the profits of a business is subject to many contingencies, causing fluctuations and uncertainties, and rendering the whole subject more or less uncertain and speculative. There is always the danger of new and unexpected competition, changes in habits and modes of living, fluctuations in sources of supply, and increase or decrease in demand; some men exact very large profits, or take advantage of other men’s necessities, while other men are content with a living profit; a man may make a patented article with his own unaided efforts and yet the processes be such that any man could perform them at nominal wages; there are the usual and unusual hazards of business, the greater or less capability and earning power of those employed, and their greater or less skill and influence in soliciting and procuring business; profits may be due to an established goodwill where personal services are a small factor; some lines of business are conducted on a conservative plan and earn a small margin of profit, while others are more hazardous and usually command larger profits; there are periods of prosperity and depression; there are periods of rising markets, where profits are sure and certain, followed by falling markets, when losses are equally sure and certain. Any inquiry into the realm of profits of a business opens a wide field for speculation and fraudulent practices, *71 and in any well-contested controversy justice could only be arrived at by a thorough inquiry into the business and an accounting. Not only are such facts peculiarly within the knowledge of the injured party, but it would be possible to make a false showing which it would be impossible to counteract.
All the foregoing hazards are influenced but little if any by the skill and experience of the person who manages and controls the business. The case at bar well illustrates how dangerous and unsatisfactory it is to make an inquiry into profits. The period of time covered by the inquiry is from February, 1917, to May 21, 1917, this being the period immediately preceding and following the declaration of hostilities between this country and Germany. Owing to the fact that the war had been in progress in Europe for several years there was a period of unexampled prosperity in this country, and it so happened that the period of prosperity occurred at a time when for causes unnecessary to state the transportation system of the United States was breaking down under the strain imposed upon it. Persons owning a truck could command almost any price for interurban transportation, and especially between two busy cities like Akron and Cleveland. Plaintiff was taking full advantage of the situation, and, assuming his testimony to be true, he was charging compensation for Ms services far beyond rates which could reasonably have been charged two years previous, and doubtless far beyond rates which prevail even at this date, although Mgh prices are still being maintained.
It is charged by counsel for defendant that the size of the verdict indicates that the jury was influ *72 enced by the plaintiff’s testimony of his large profits. It therefore becomes necessary to determine the proper rule which should govern the situation. Although it is conceded by counsel for plaintiff that profits are not to be the measure of damages, it is contended that evidence of profits is admissible to aid the jury in estimating the value of plaintiff’s lost or impaired earning power. While it is true that several cases cited by counsel for plaintiff attempt to draw this distinction, a careful analysis of the subject shows that no real distinction exists. The •trial court attempted to follow the rule laid down by the courts of Kansas and other western states, but a careful analysis o.f that portion of the charge hereinbefore quoted shows how contradictory and how confusing the efforts of the trial judge became. The trial judge began by stating that “in arriving at a proper measure of recovery” the jury should take into consideration such things as pain, suffering, physical disability, etc., and then instructed them that they “may add another,” meaning of course that they should consider one other thing in arriving at “ a proper measure of recovery. ’ ’ The court then proceeded to discuss the matter of profits, and although it was stated that profits could not be the subject of a recovery the jury had nevertheless been instructed that it was one of the things which might be considered as “a proper measure of recovery.” Again, the jury were instructed that although the plaintiff’s inability to superintend or manage his business in person might not be considered in relation to profit or interest upon investment, the jury might consider “plaintiff’s inability to conduct his business” in so far as such inability resulted directly in financial loss to himself.
*73 When the court speaks of “a proper measure of recovery,” the jury will naturally and inevitably understand and apply that expression as “a proper measure of damages,” and when they are instructed that “profit resulting from investment cannot be the subject of recovery,” but in the same connection are told that profits may be taken “into account in determining what damages plaintiff may be entitled to recover,” and when the court further attempts to draw a distinction between “loss of profits” and “financial loss by reason of inability to conduct his business,” surely a verdict of $25,000 may be suspected of reflecting in part a loss of profits of business.
All that language must necessarily be conceded to be confusing, even to a mind trained in legal matters, and it must further be conceded that such language addressed to jurors untrained in the law would inevitably lead to confusion, and that it would be impossible for the average juror to consider the matter of profits “in estimating the value of plaintiff’s lost or impaired earning power” but not to consider the same in measuring plaintiff’s damage.
The foregoing is no criticism of the trial judge, but is merely pointing out the fact that he attempted an impossible thing and failed, just as we think the courts also erred in several of the cases cited by counsel for plaintiff in error.
It is apparent therefore that if in personal injury cases the loss of profits is not to enter into the measurement of the damages, all evidence of profits resulting from investment of capital, or from the employment of the services of others, must be kept from the consideration of the jury for all purposes, and the testimony must necessarily be confined to *74 the nature and extent of the business and the part which plaintiff transacted in it.
It is, however, contended that plaintiff was an unusually industrious man and that he had made an unusual success of his business and that his services could not have been replaced by others; that no one else could have been employed to take his place; and that it was not possible to show by evidence the compensation paid to persons generally for doing such business for another. It is of course possible to conceive of certain lines of business where the services of certain men could not easily be replaced by others, and where the proper compensation could not be ascertained for the employment of others to do like service. The testimony shows that this plaintiff was engaged in the fruit and trucking business. Surely there is nothing very expert or unusual about such business, and persons ought easily to be found to solicit orders and to make purchases and sales of fruit produce. Surely the difficulty of proving the value of plaintiff’s services and the cost of employing others to render like service is not to be compared with the danger of a rule which would admit of compensating him for the unusual profits of that extraordinary period, as testified to by him.
Since all authorities agree that loss of profits of business is not a proper measure of damages in personal injury cases, the only sure way of correctly applying such a rule is to keep all evidence of profits from being admitted in evidence.
If plaintiff was only performing the services of an ordinary man he should be compensated for the value of the loss of the service of an ordinary man, and if his service was such as is usually performed *75 by two or even three men his compensation should be increased accordingly and in such value as can be established with reasonable certainty.
The judgment of the court of appeals will therefore be affirmed.

Judgment affirmed.

Hough, Robinson, Jones and Clark, JJ., concur.