## Long v. Schumacher, Appellant.

## O'Reilly v. Schumacher, Appellant.

## Dacy v. Schumacher, Appellant.

Argued May 27, 1941. Before SCHAFFER, C. J., MAXEY, DREW, LINN, STERN, PATTERSON and PARKER, JJ.

*John D. McIntyre,* with him *Samuel G. Wagner,* for appellant.

*Abe R. Cohen,* with him *Benjamin B. Crone,* for appellees.

OPINION BY MR. JUSTICE DREW, June 30, 1941:

These three actions in trespass, consolidated for the purpose of trial in the court below, were instituted by

William Long, Patrick F. O'Reilly and William Dacy, all policemen of the City of Pittsburgh, to recover damages for personal injuries sustained when the automobile owned and operated by Edward N. Schumacher, defendant, collided with the motorcycle and sidecar upon which they were hastening to a fire. The jury rendered a verdict of $1,000 for O'Reilly, but found for defendant in the other two cases. From the orders of the learned court below refusing defendant's motion for judgment n. o. v. and awarding new trials to all three plaintiffs, defendant has appealed.

As to the motion for judgment non obstante veredicto, we have carefully reviewed the record in the light most favorable to plaintiffs and resolved any conflicts therein in their favor, as we must under such circumstances, and the following are ascertained to be the facts: The accident occurred shortly after four o'clock in the afternoon of January 26, 1938, at the exceedingly busy intersection of Penn and Highland Avenues, in the City of Pittsburgh. At this point the latter thoroughfare runs approximately north and south, and the former east and west; both being two-way streets. On the afternoon in question the weather being clear, plaintiff Long, while in the vicinity of Penn and Negley Avenues (some distance west of the scene of the accident), was ordered by his superior officer to proceed with his motorcycle immediately to a multi-alarm fire then raging, in a closely built-up section of the city, a short distance from the intersection where the collision happened, there to report to the ranking officer in charge for such duty in directing traffic, maintaining order and protecting life and property as he might direct. He was also instructed to pick up several other police officers en route. Accordingly, Long at once got under way, picking up Dacy, who climbed on to the passenger seat immediately to the rear of Long, and O'Reilly, who seated himself in the sidecar. Travelling about forty miles per hour, their siren blowing

continuously, these officers moved east on the right hand side of Penn Avenue, and as they neared the scene of the conflagration, they could see clouds of smoke arising therefrom. When within a block west of Highland Avenue, both lanes of traffic directly in front of them on the right hand side of the street were congested and a street car and a number of automobiles therein were at a standstill. Therefore, Long, being unable to proceed on that side of the street crossed to the left side of Penn Avenue, and continued east thereon to the intersection of that thoroughfare and Highland Avenue. There vehicles within a block in all directions had been brought to a complete standstill, and had so remained for some time, irrespective of the change of the traffic light at that corner. Fire-fighting apparatus and other police vehicles had gone through the intersection a short time before. Long reduced his speed to about twenty-five or thirty miles per hour as he neared this corner and proceeded, upon the direction of a traffic officer there stationed, into the intersection, just as the traffic light turned red. Defendant, despite the fact that he had stopped his automobile with the other traffic headed north on Highland Avenue at the south side of Penn Avenue and had been so standing for some time, drove his car out into Penn Avenue, totally oblivious to the clearly audible sound of the siren, as well as the signal of the traffic officer there on duty, and collided with the police motorcycle, causing the injuries of which plaintiffs now complain.

Defendant contends that the foregoing testimony of plaintiffs showed that they were guilty of contributory negligence in that they violated the provisions of The Vehicle Code of May 1, 1929, P. L. 905, as amended, by exceeding the speed limit, failing to drive on the right side of the street, passing a standing street car on the left and proceeding through a red traffic signal. There would be merit in this argument of defendant were these plaintiffs not policemen actively engaged,

under emergency conditions, in carrying out their duties as public servants. See *Reilly v. Philadelphia,* 328 Pa. 563. Public policy demands, and section 1014 (b) and 1015 of The Vehicle Code provide, that police and fire department vehicles, as well as ambulances, when operated upon official business, shall be given the right of way upon giving audible signal of their approach, for very frequently a delay of minutes would cause sacrifice of life or property. In this situation, ordinary traffic regulations are not applicable as a standard of care for judging their conduct. Obviously, when police, fire and hospital vehicles are engaged upon official emergency duty, similar to that here presented, and necessity demands that they be operated upon the left side of the street or to the left of a street car, these vehicles are relieved from such restrictions in The Vehicle Code just the same as they are exempt from the requirements contained in that statute as to speed [section 1002 (f)] right of way [section 1014 (b)], traffic signals [section 1026 (d)] and through "stop" highways [section 1016 (d)]. Therefore, as indicated by these sections of The Vehicle Code, the test in all such circumstances is whether the vehicle was being operated "with due regard for safety" and not in "reckless disregard of the safety of others." Thus, we cannot declare plaintiffs contributorily negligent as an inescapable legal conclusion, since it was clearly the province of the jury to say whether or not the operation of the motorcycle in question was in reckless disregard of the safety of others.

Furthermore, there is no foundation whatsoever for the contention of defendant that the exceptions in The Vehicle Code relating to the emergency operation of fire, police and hospital vehicles are not applicable to the movement of police motorcycles answering fire calls. Undoubtedly, the latter are within the provisions exempting from ordinary traffic rules "fire department or *fire patrol* vehicles when travelling in response to a fire alarm".

(Italics added.) While the term "fire patrol vehicles" is not defined in the Code, yet the legislature clearly intended to include therein police vehicles answering fire calls, as well as those of private companies maintained for protective and salvage work and recognized as performing a public obligation in *Fire Insurance Patrol v. Boyd,* 120 Pa. 624. In that case we said (p. 642) : "It is as much the province or duty of the city to save life and property at fires as to extinguish such fires. . . ." Obviously the legislature recognized that it is just as important for policemen as for firemen to arrive at the scene of a fire with all possible dispatch consistent with public safety, else the latter, impeded by the congestion of uncontrolled traffic, would be unduly delayed. It would be empty and vain to say that the legislature intended to expedite the rapid movement of fire-fighting apparatus, but in the same enactment also intended to place restrictions upon the police action by which that could most feasibly be accomplished. Certainly the Court cannot assume that the lawmakers intended a result so absurd and unreasonable: Statutory Construction Act of May 29, 1937, P. L. 1019, section 52. It is only logical to conclude that the phrase "fire patrol vehicles" was intended to include police vehicles when engaged in fire emergency duties.

The remaining assignments of error, all relating to the orders granting new trials, require but little discussion. In this connection, we said in *Reese v. Pittsburgh Rys. Co.,* 336 Pa. 299, 301: ". . : we have repeatedly required appellant, in this class of cases, where the record presented to us did not with certainty base the decision of the court below upon a single point, to obtain from the trial judge and file in this court a certificate expressly stating that, but for this one point, he would not have granted a new trial, as a condition precedent to even an argument of such an assignment of error here. : . ." The record here does not so state,

nor is there a certificate so asserting. Furthermore, no palpable abuse of discretion by the learned court below has been shown, or could be shown on this record and, therefore, the rulings will not be disturbed.

Orders affirmed.