Commonwealth, Appellant, *v.* Beatty.

145

Argued December 8, 1969. Before WRIGHT, P. J., WATKINS, MONTGOMERY, JACOBS, HOFFMAN, SPAULDING, and CERCONE, JJ.

*James D. Crawford,* Assistant District Attorney, with him *Anne T. Welsh,* Assistant District Attorney, *Richard A. Sprague,* First Assistant District Attorney, and *Arlen Specter,* District Attorney, for Commonwealth, appellant.

*Francis S. Wright,* Assistant Defender, with him *Melvin Dildine,* Assistant Defender, and *Vincent J. Ziccardi,* Acting Defender, for appellee.

OPINION BY MONTGOMERY, J., March 19, 1970:

This is an appeal by the Commonwealth from an order suppressing evidence in connection with an indictment charging burglary, larceny, and receiving stolen goods.

At the suppression hearing the following facts were adduced. On September 24, 1968, at 3:00 p.m., Officer Hansbury and a fellow officer were approached by an informant as they were stopped at the corner of Hicks and Ranstead Streets in Philadelphia, Pennsylvania. The informant was known to Officer Hansbury as a businessman at that location. Officer Hansbury testified he had known the informant for fifteen years and had on prior occasions received information from him that resulted in arrests and convictions. The informant pointed out defendant's car which was half a block away and told Officer Hansbury that defendant, known to both of them as "Country", was in the tailor shop trying to sell some watches that had been stolen in a burglary. Officer Hansbury testified that he knew defendant from prior experiences, that defendant was a known burglar and that he was not, to the officer's knowledge, engaged in the jewelry trade. The officer also testified that it was a high risk burglary area.

After receiving that information, Officer Hansbury approached defendant's car. As he did so, a man who had been sitting in the front seat of the car lay down on the seat, apparently trying to conceal himself. Through the open car windows Officer Hansbury saw a television set on the back seat. It was sticking out of a paper carry-all bag. As he began to question the man about the television set, defendant walked out of the tailor shop with several watches and a lady's ring in his hands. When asked about the television set, defendant gave a story that contradicted what the officer had already been told. At this time Officer Hansbury arrested the two men. Before taking them to the po-

lice station, he asked defendant what else he had in his car. Defendant opened the trunk, revealing a large number of men's suits, and Officer Hansbury told him to close it. Later that evening the trunk was searched and the suits seized pursuant to a warrant that is not contested by this appeal.

The lower court found that the information originally relayed to the police officers was not sufficiently reliable to support probable cause since the report came casually from a neighborhood businessman and was lacking in specificity as to how, when, and where the information was obtained. The lower court further found that the information subsequently obtained by the arresting officer did not corroborate the tip to the extent necessary to justify the arrest without a warrant.

The court relied upon *Spinelli v. United States,* 393 U.S. 410, 89 S. Ct. 584, 21 L. Ed. 2d 637 (1969), which held that the ". . . informer's report must first be measured against Aguilar's standards, [*Aguilar v. Texas,* 378 U.S. 108, 84 S. Ct. 1509, 12 L. Ed. 2d 723 (1964)], so that its probative value can be assessed. If the tip is found inadequate under Aguilar, the other allegations which corroborate the information contained in the hearsay report should be considered." (Citation supplied) *Spinelli* at page 415. *Spinelli* also held that, if the tip is insufficient, then the court should be cautious in permitting surrounding circumstances to corroborate it.

*Aguilar* required that when processing a search or arrest warrant the issuing magistrate must be informed of sufficient facts so that he may make an independent judgment as to whether probable cause does or does not exist. While an affidavit may be based upon a hearsay report, the magistrate must be informed of the circumstances from which the informant obtained his

information. The mere allegation by the officer that the informant is reliable is not sufficient.

In applying these principles to the facts in *Spinelli* the Court found that the affidavit was insufficient to enable the magistrate to make that independent determination. The affidavit contained the following allegations: (1) that the FBI kept track of the defendant's movements for five days prior to his arrest; (2) that he was seen entering an apartment building and a particular apartment on four of those five days; (3) that a check with the phone company disclosed that the apartment contained two telephones bearing the numbers of WYoming 4-0029 and WYoming 4-0136, listed under a name other than defendant's; (4) that the defendant was known to the FBI as a bookmaker; (5) that the FBI had been informed by a reliable source that the defendant was accepting bets by means of telephones which had been assigned the numbers of WYoming 4-0029 and WYoming 4-0136.

The Court ruled in connection with the assertion that the defendant was a known gambler, that as it was not itself a basis for a finding of probable cause, it should not be used to give additional weight to allegations that would otherwise be insufficient.

*Spinelli* and *Aguilar* set out the standards to be applied to the case at hand, but we feel that the facts here require an opposite result.

In *Aguilar* a search warrant was issued on the allegation that an informant known to be reliable had told the police that the defendant had narcotics in his home. There were no allegations that would tend to corroborate the hearsay report.

In *Spinelli* the informant's tip was substantiated by the fact that the defendant was seen entering an apartment which was known to contain telephones used, according to the informer, in a bookmaking operation. There was no statement indicating the man-

ner in which the informant had acquired his information. The Court said that in the absence of such information ". . . it is especially important that the tip describe the accused's criminal activity in sufficient detail that the magistrate may know that he is relying on something more substantial than a casual rumor circulating in the underworld or an accusation based merely on an individual's general reputation." *Spinelli,* supra, at page 416.

In the instant case the tip given to Officer Hansbury was not one that could be characterized as the possible subject of rumor or the result of general reputation. Police were told that at that moment the defendant was attempting to sell stolen watches a few doors down the block. This was not the case where the police had the opportunity to ascertain the absolute credibility of the informant. It was their duty to hurry to the scene and to prevent the commission of a crime or apprehend an offender. We are concerned here with the street encounter and something less than absolute certainty should justify an investigation by the police when criminal activity is reported. We agree that the minimal information supplied by the informant may not have given rise to probable cause. The facts of the attempted concealment by the codefendant, conflicting stories relating to the ownership of the television, and the possession by the defendant of watches and rings, when taken together with the informant's tip, would raise the level of suspicion to that of probable cause.

This case may be compared with *Commonwealth. v. Altizer,* 213 Pa. Superior Ct. 201, 245 A. 2d 692 (1968), where an anonymous informant gave the police a description of a man attempting to sell postal money orders in a nearby bar. Upon entering the bar the police saw a man fitting the description with the top half of a packet of what appeared to be money orders pro-

truding from his back pocket. An arrest was made and the packet was found to contain stolen postal money orders. It was held that probable cause for arrest did exist and that the money was legally seized.

We therefore conclude in the instant case that the standards laid down by *Aguilar* and *Spinelli* have been met and that the arresting officers had within their knowledge sufficient facts and circumstances to warrant a man of reasonable caution to believe that an offense had been or was being committed. *Aguilar*, supra, at page 121.

For these reasons the order of the lower court must be reversed so that the evidence seized incident to the arrest may be admitted into evidence.

Order reversed and record remanded with a procedendo.

HOFFMAN, J., concurs in the result.