## Emery v. Borough of Lewistown

*Richard C. Angino,* for plaintiff.
*Robert Siegel,* for defendants.

ZIEGLER, *P. J.,* August 26, 1976—Iris Marie Emery, executrix of the estate of Amos M. Emery, deceased, brought this wrongful death and survival action against the Borough of Lewistown and Lewistown Borough police officer Gary E. Dickson. The action arose out of the death of Amos M. Emery in a motor vehicle accident on U. S. Highway Route 22 in Walker Township, Juniata County, Pennsylvania, approximately sixteen miles east of the Borough of Lewistown. Defendants joined Raymond Lee Hood as an additional defendant.

After trial by jury, verdict was returned in favor of plaintiff and against defendants and additional defendant in the amount of $180,000 in the wrongful death count and $20,000 in the survival count. It was by reason of this verdict that defendants filed motion for judgment non obstante veredicto and motion for new trial.

## I. MOTION FOR JUDGMENT
## NON OBSTANTE VEREDICTO

Judgment non obstante veredicto [1] is a judgment rendered in one party's behalf despite a prior judgment obtained by the other party. At common law, a judgment n.o.v. was entered only in favor of plaintiff, defendant's remedy being arrest of judgment: King v. Philadelphia Suburban Transportation Co., 160 Pa. Superior Ct. 26, 50 A.2d 34 (1946). At present, however, a motion for judgment n.o.v. is available to either party: Freedman v. Mutual Life Insurance Co. of N. Y., 342 Pa. 404, 21 A.2d 81 (1941); whenever such moving party has had a point requesting binding instructions reserved or declined by the court: Dora v. Dora, 392 Pa. 433, 141 A.2d 587 (1958); Act of April 22, 1905, P. L. 286, as amended, 12 P. S. §681.

Defendants [2] in this case requested a binding instruction "that under all the circumstances of this case, the jury is bound to return a verdict in favor of the Defendants, the BOROUGH OF LEWISTOWN and GARY E. DICKSON." The court declined to give this binding instruction to the jury. Defendants then moved the court to have all of the evidence taken at the trial certified and filed so as to become a part of the record and for judgment in their favor non obstante veredicto.

A judgment n.o.v. will be entered only in a clear case, with any doubts being resolved in favor of the verdict winner: Stewart v. Chernicky, 439 Pa. 43,

---

1. Also known as "judgment n.o.v." or "judgment notwithstanding the verdict."

2. At all times in this opinion "defendants" shall refer to Borough of Lewistown and Gary E. Dickson. Additional defendant Raymond Lee Hood, who did not appear in person or by counsel, will be referred to as "Hood."

266 A.2d 259 (1970); Elridge v. Melcher, 226 Pa. Superior Ct. 381, 313 A.2d 750 (1973). In considering such a motion, the evidence together with all reasonable inferences therefrom, are considered in the light most favorable to the verdict winner: Miller v. Checker Yellow Cab Co. of Bethlehem, Inc., 229 Pa. Superior Ct. 752, 348 A.2d 128 (1974); Flickinger Estate v. Ritsky, 452 Pa. 69, 305 A.2d 40 (1973). If, after viewing the evidence in such a light, there is support for the verdict by reason of plaintiffs having produced sufficient evidence on the basis of which the fact finder could have reasonably inferred the facts necessary to establish defendant's liability: Handfinger et al. v. Philadelphia Gas Works, 439 Pa. 130, 266 A.2d 769 (1970); and the verdict is otherwise lawful, such a judgment n.o.v. should not be granted: Roman Mosaic & Tile Co. v. Vollrath, 226 Pa. Superior Ct. 215, 313 A.2d 305 (1973). The judgment of the trial court should not be substituted for the finding of the jury unless the finding is beyond justification: Kanner v. Best Markets, Inc., 188 Pa. Superior Ct. 366, 147 A.2d 172 (1958).

Viewing the evidence and all reasonable inferences therefrom in the light most favorable to plaintiff, the facts may be summarized as follows: Shortly before midnight on March 16, 1970, Lewistown Borough policeman Gary E. Dickson, one of defendants, was on routine patrol duty when he observed an auto whose operator was later identified as Hood. Said auto and driver were violating no law when Dickson first observed them, nor did Dickson know of any criminal activity that night which might have involved the auto or its operator. Dickson observed dents in the auto, however, and decided that that fact, coupled with the

auto's "dirty nature," provided sufficient suspicion to question the driver. Dickson then approached Hood's auto for the purpose of making a routine check, whereupon, Hood attempted to outrace the police car. Dickson chased Hood through the streets of Lewistown and onto Route 22 west, giving up the chase approximately seven miles outside of the Borough. The speeds during this chase reached upwards of ninety miles per hour.

Having given up the pursuit, Dickson returned to the Lewistown Police Station where he checked the auto's registration number and learned the registrant's identity. Upon checking with the Bureau of Motor Vehicles, he found that the license plate on the auto he pursued, a Ford, had been issued for a Packard. Dickson did not then pursue the matter by contacting the State Police or any other police or investigative agencies.

Dickson then went back on patrol. He spotted the auto an hour later. With full knowledge of Hood's propensity to flee, Dickson once again attempted to stop him and, once again, Hood sped off. Dickson pursued Hood at speeds approaching 90 miles per hour through the streets of Lewistown and onto Route 22 east. Approximately sixteen miles east of Lewistown on Route 22 in Walker Township, Hood, still being chased by Dickson, attempted to pass a tractor trailer driven by Amos M. Emery, late husband of plaintiff. While attempting to pass Emery's rig, Hood saw an oncoming vehicle and cut sharply to the right, avoiding a possible head-on collision but causing Emery to run off the road. Emery was killed when his rig overturned. His wife subsequently instituted this action as executrix of his estate.

In their motion for judgment n.o.v., defendants

contend that no reasonable fact finder could find against them considering all of the evidence and applicable law. We cannot share this view and, finding the jury's verdict lawful, refuse to grant defendants' motion.

Defendants, in their brief, rely primarily on case law and the exemption provision of The Vehicle Code of April 29, 1959, P. L. 58, as amended, 75 P.S. §1002(f): "The speed limitations set forth in this section shall not apply to vehicles, when operated with due regard to safety, under the direction of the police in chase or apprehension of violators of the law, or of persons charged with or suspected of any such violation. . . . The exemption shall not, however, protect the driver of any such vehicle from the consequences of a reckless disregard of the safety of others."

A closer look at this section reveals two prerequisites, both of which must be complied with before one may benefit from its protection: (1) that the operator be a policeman[3] pursuing violators or suspected violators of the law, and, (2) that the policeman must have operated his vehicle with due regard to safety and not in a manner exhibiting a reckless disregard for the safety of others.

The jury, in finding against defendants, obviously felt that Dickson did not act in a manner consistent with the above prerequisites. The matter of liability is a question which, once put to the jury, lies within its realm. The jury heard all the evidence, saw all the witnesses and decided that defendants were negligent. It is only if their decision is beyond justification that a judgment n.o.v.

---

3. This section also applies to fire department and fire patrol vehicles.

should be granted: Kanner v. Best Markets, Inc., supra.

In attempting to show that the jury's decision was truly unreasonable, defendants cited a plethora of cases allegedly holding that a policeman acting as Dickson did is not liable. In reading the cases, however, we find many important characteristics which distinguish them from our case.

In Reilly v. Philadelphia, 328 Pa. 563, 195 Atl. 897 (1938), a case cited by defendants as key and on point, the policemen involved were chasing a known felon. In the present case, the first chase was triggered by observation of a dirty auto with some dents in it. The second chase resulted from the driver's propensity to flee from a police car. Certainly nothing approaching a felony was involved. Other cases cited dealt with the pursuit of felons: Draper v. Los Angeles, 91 Cal. App.2d 315, 205 P.2d 46 (1949); Taylor v. City of Alexandria, 261 So.2d 92 (3d Cir. La. 1972); W. Va. v. Fidelity and Cas. Co. of N. Y., 263 F. Supp. 88 (S.D. W. Va. 1967); the pursuit of drivers who were *already* creating a danger on the highways *before* being pursued: Gallagher v. Swiderski, 45 Erie 67 (1960); Morris v. Combs, Admr., 304 Ky. 187, 200 S.W.2d 281 (1947); Roll v. Timberman, 94 N.J. Super. 530, 229 A.2d 285 (1967); U.S. v. Hutchins, 268 F.2d 69 (6th Cir. 1959); Bailey v. Edison, 248 N.E.2d 141 (1972); Wilson v. Tucson, 8 Ariz. App. 398, 466 P.2d 504 (1968); and situations where a fire or emergency was being responded to and "a delay of minutes would cause a sacrifice of life or property." Long v. Schumacher, 342 Pa. 356, 20 A.2d 765 (1941); Ferruzza v. Pittsburgh, 394 Pa.

70, 145 A.2d 706 (1958); Merkel v. Scranton, 202 Pa. Superior Ct. 15, 193 A.2d 644 (1963).

In Reilly, supra, the court stated: " 'Exceptional circumstances may make it reasonable to adopt a course of conduct which involves a high degree of risk of serious harm to others. However, *conduct which creates so grave a risk cannot be justified as reasonable unless the end, which cannot be gained except by pursuing it, is itself of very great social value.*' " (Emphasis supplied.) We can certainly see how a reasonable man, or jury as in the present case, could properly question what "very great social value" Dickson was undertaking to gain by entering into his chase.

In another case relied on by defendants, Gallagher v. Swiderski, supra, the court found a policeman not liable when the car he was chasing caused a fatal accident, stating: "The fright of a miscreant or his urge to flee to avoid apprehension are matters peculiarly dependent upon the mental characteristics of the individual, and to hold an officer civilly responsible for the acts of a violator because he attempted to apprehend a miscreant who possessed a penchant for avoiding arrest would be to require an officer to have mystic powers."

Dickson, however, needed no such "mystic powers" to realize that Hood would try to outrun him during the fatal chase—their previous encounter having served sufficient notice that Hood did indeed possess such a penchant. In fact, the only time Hood presented any threat to the public safety was when Dickson attempted to apprehend him. This is a much different situation than when an officer observes a driver already creating a high-

way hazard and attempts to remove him from the road.

In reviewing the evidence, as well as the law cited by defendants, we do not agree that the jury's verdict was one that no reasonable fact finder could have found. We therefore cannot enter judgment n.o.v. in defendants' favor and must dismiss their motion.

## II. MOTION FOR NEW TRIAL

Defendants, in the alternative of asking for judgment n.o.v., requested a new trial. Although defendants listed 39 reasons in support of their motion, we will discuss only those reasons which defendants preserved by exception and briefed.

## A. ORDER OF PROOF

Defendants contend that the court committed prejudicial error by allowing certain witnesses to testify as to damages before the issue of liability was covered. Defendants' only authority on the matter is Pa. R.C.P. 224, which reads as follows: "The court *may* compel the plaintiff in any action to produce all of his evidence upon the question of the defendant's liability before he calls any witnesses to testify solely to the extent of the injury or damages. The defendant's attorney may then move for a non-suit. If the motion is refused, the trial shall proceed. *The court may, however, allow witnesses to be called out of order if the court deems it wise so to do."* Adopted September 8, 1938, eff. March 20, 1939. (Emphasis supplied.)

It is clear from the language of the above rule that the order of proof is in the control of the trial court in the exercise of its sound discretion: Agate v. Dunlevy, 398 Pa. 26, 156 A.2d 530 (1959). The granting of a new trial based on such an exercise of discretion will lie only where the court man-

ifests a palpable abuse of such discretion which clearly alters the outcome of the case: Phelps v. Paul L. Britton, Inc., 412 Pa. 55, 192 A.2d 689 (1963). Defendants assert that the allowance of testimony as to damages, before the issue of liability was covered, was such an abuse and merits a new trial. We cannot agree.

It has long been the rule that the court may call professional men, public officials, or any witnesses out of turn to avoid prejudice or serious inconvenience: Brzyski v. Schreiber, 314 Pa. 353, 171 Atl. 614 (1934). In the present case, plaintiff had an actuary present and scheduled to testify. Defendants waited until the last minute to object to this witness' appearance, a matter that could have easily been brought up at pre-trial conference in order to prevent unnecessary expense and inconvenience to plaintiff and the actuary.

In its exercise of discretion the court did not exhibit an abuse which warrants a new trial. As this was a wrongful death and survival action, the jury was well aware that the damages to be sought were not going to be minimal. There was not the slightest bit of evidence, either observed by the court or indicated by defendants, that the allowance of the actuary to testify "out of turn" in any way caused the jury to arrive at a finding of liability which they otherwise would not have made. Absent such a showing we must dismiss defendants' contention as more than mere conjecture is needed to find an abuse of discretion which warrants a new trial.

## B. ADMISSION OF INCOME TAX RETURNS

Defendants contend that the court erred in allowing the admission into evidence of the 1968 joint income tax return of decedent and Mrs. Em-

ery. Their first contention is that, as a self-serving document, the return was improperly admitted as a basis upon which to establish decedent's earnings.

In allowing the use of the 1968 tax return, the court balanced the possibilities of its being a self-serving document with its probative value as the most representative yardstick of decedent's earnings, no other adequate business records having been kept by decedent. The use of the next year's return (1969) was thus disallowed, as it was prepared after decedent's death and at a time when the parties may have been anticipating litigation.

That the 1968 return was a self-serving document, prejudicial to defendants, is a contention with little realistic merit. In Frye v. Gold Pipe & Supply Co., 50 So.2d 38 (2d Cir. La. 1951), the use of such a return for computing earnings was allowed, the court stating: "The record contains no evidence touching his income as gravel hauler prior to the year 1948, and all we have on this score for that year and for 1949 are his Federal income tax returns, which it is proper to accept, as regards gross income, *for surely no one will exaggerate his income for the purpose of fixing a tax due the government.*" (Emphasis supplied.)

From a realistic viewpoint, a person's income tax return is much more likely to understate his total income than to exaggerate it. The actual figures on the return in question were certainly not indicative of any contrivance on plaintiff's part. To the contrary, they were quite modest considering decedent's profession and experience.[4] As de-

4. The return in question showed decedent's gross income in 1968 as $9,677. In 1974, according to testimony at the trial, the average truck driver earned from $12,000 to $18,000.

cedent himself could not testify and as business records were not available, the tax return was the best possible measure of his earnings.

## C. PROFIT OF BUSINESS AS PROOF OF EARNING POWER

Defendants contend that the use of the entire $9,677 to compute loss of earnings was improper as only the $5,221.60 earned as wages should have been used. First, while it is true that the income attributed to rents paid to decedent should not have been used in computing earnings, this figure, $60.90, was properly deducted in all computations. The bulk of this point in controversy, however, concerns the $4,366 of income from a trucking business operated independently by decedent. Defendants cite Gilmore v. P. R. T., 253 Pa. 543, 98 Atl. 698 (1916), as holding that income from the management of a business enterprise is not earnings and cannot be used in computing decedent's loss of earning power.

A closer reading of Gilmore, however, reveals that it holds just the opposite with respect to the situation in the case at hand: "In certain instances where one, as a result of injuries received through the negligence of another, had been entirely deprived of the power to carry on a business in which his personal labor and superintendence were the major assets, or where one had died as the result of his injuries, and the evidence showed regular sums given his family which were earned in a business that consisted principally of his labors and management, we have permitted evidence

---

Even accounting for proper inflationary coefficients, this would put Mr. Emery's earnings on the minimal side for those in a similar occupation.

concerning the net earnings of the injured or deceased person, on the theory that it was the only way, under the peculiar circumstances of the case, satisfactorily to show earning power."

Decedent's business was exactly of the nature described in this section of Gilmore. He was his own sole employe, the business consisting solely of his labors and management. While the *general* rule, as cited in Gilmore, is that profits derived management of a business are not earnings, the present situation fits squarely into the exception allowing the computation of these profits into lost earnings.

### F. CHARGE AS TO AUTHORITY TO PURSUE

Defendants next assert error in the court's charge covering Dickson's authority to pursue and arrest Hood outside the Borough of Lewistown. The portions of said charge which defendants claim are not in accordance with the law are as follows: "We say to you also that Officer Dickson could have pursued the vehicle from the Borough of Lewistown if he had probable cause to believe that the occupant had committed a felony within the Borough of Lewistown; however, I say to you that Officer Dickson's mere suspicion that the vehicle had been stolen did not constitute such probable cause as would have authorized him to arrest one or more occupants of the vehicle outside the Borough of Lewistown.

"Furthermore, Officer Dickson could not have caused a valid arrest to be effected outside the Borough of Lewistown for traffic offenses committed in his presence within the Borough of Lewistown or for traffic offenses committed in his presence outside the Borough of Lewistown by communicating his information to another police

officer having authority to arrest outside the Borough of Lewistown but in whose presence such traffic offense had not been committed.

"Therefore, what Officer Dickson could have accomplished by such pursuit was limited to trailing the vehicle with hope that he would be able to identify the occupants.

"It is for you to determine whether or not Officer Dickson's pursuit was an official emergency duty."

Defendants' argument stresses that "where police have a reasonable suspicion that some criminal activity is underway, something less than absolute certainty is required to justify an investigation," and that Dickson "had a right to undertake the pursuit of this [Hood's] car". Commonwealth v. Beatty, 216 Pa. Superior Ct. 144, 264 A.2d 184 (1970). Nowhere in the charge, however, is this contention disputed. A reading of the contested portions of the charge recited above reveals that such a pursuit or investigation is allowed but that an arrest would not have been. The court then properly puts it to the jury to determine whether or not such a pursuit or investigation should be classified as an official emergency duty, absent the power to arrest.

That Officer Dickson did not have the power to arrest is evidenced by the Act of August 6, 1963, P. L. 511, as amended, 19 P. S. § 11, in effect on the date of the accident, and later cases construing that statute *as of the date in question:* [5]

"§ 11. Arrest beyond territorial limits in pursuit of felon.

"Any police officer in the employ of a county, city

---

5. March 16, 1970, the date of the accident.

borough, town or township may arrest, with or without a warrant, any felon beyond the territorial limits of the political subdivision employing such officer for a felony committed by the felon within the political subdivision employing the police officer if such officer continues in pursuit of the felon after the commission of the felony. 1963, Aug. 6, P.L. 511, No. 267, §1."

19 P. S. § 11 shows a definite intention by the legislators to allow an officer to effectuate an arrest after going beyond his territorial limits *only* when such officer is in hot pursuit of a felon who committed the felony inside the officer's jurisdiction. The court in Commonwealth v. Troutman, 223 Pa. Superior Ct. 509, 302 A.2d 430 (1973), also made such an observation, finding that "[w]hile police officers may also make a warrantless arrest for a misdemeanor where they have probable cause to believe that such an offense is being committed in their presence . . . the legislature has not extended the authority to township police officers to cross township lines in order to make an arrest in hot pursuit of a misdemeanant." While Troutman, supra, was decided in 1973, the court made no new finding of law, it merely pointed out the obvious intention of the legislature in enacting 19 P. S. § 11, the applicable law at the time of the accident. In strong agreement with this theory is the court in Commonwealth v. Costella, 63 D. & C.2d 115 (1973), holding that at least prior to the effective date of Act No. 109 of 1973,[6] a borough policeman could not legally make an arrest for a misdemeanor or summary offense outside the limits of his borough.

6. November 2, 1973.

In light of the above cases and the statutory law in effect at the time of the accident, we must dismiss defendants' contention of error as being without merit.

ORDER

Now, August 26, 1976, defendants' motion for judgment non obstante verdicto and motion for new trial are overruled.