## M. B. KIES v. CITY OF ERIE.

APPEAL BY PLAINTIFF FROM THE COURT OF COMMON PLEAS OF ERIE COUNTY.

Argued April 30, 1890—Decided May 19, 1890.
[To be reported.]

1. The construction of a building by a city and its use for the housing of fire engines, in such manner that its doors swing outwardly, and, when open, extend nearly half way across the sidewalk in front of it, is not a breach of the city's duty to maintain its sidewalks in a condition reasonably safe for passers by.

2. Nor is it an act of negligence in the city to place upon such doors springs, which merely assist the firemen in swinging them open, and do not of themselves cause the doors to open with such suddenness and violence as to make them likely to injure persons passing upon the sidewalk.

3. The testimony of a plaintiff suing the city for injuries received in consequence of the rapid and violent opening of such doors, showing that it was not only possible but probable that the violence was caused by a push from an employee in the city fire department, a nonsuit was not error, the doctrine of respondeat superior being inapplicable.

Before PAXSON, C. J., STERRETT, WILLIAMS, McCOLLUM and MITCHELL, JJ.

Statement of Facts.

No. 9 July Term 1890, Sup. Ct.; court below, No. 253 September Term 1886, C. P.

On August 21, 1886, Miss M. B. Kies brought case against the city of Erie to recover damages for personal injuries alleged to have been suffered by the plaintiff through the defendant's negligence. The defendant pleaded not guilty.

At the trial on October 7, 1889, the following facts were shown upon the part of the plaintiff:

In April, 1886, Peach street was one of the highways of the city of Erie much used by foot passengers. Some years prior thereto, the city became the owner of a lot of ground on the west side of said street, erected thereon a building for the use of its fire department, and at the time named the building was in use for fire department purposes, a fire engine and other apparatus being kept therein. The building was so constructed and arranged that the doors, through which the fire engine and other apparatus would be drawn to a fire, opened outwardly, swinging over and across the sidewalk of the street. There were two doors, each nearly six feet wide. The sidewalk was nearly twelve and one half feet in width; so that the doors, if opened and standing at right angles with the building, would occupy nearly half of the width of the pavement, and when in that position the bottoms of the doors would be at an average distance of about four inches above the sidewalk. The doors were rather heavy, their frame work being two inches thick. To assist in opening them, springs were affixed to them on the outside. The only testimony describing the operation of these springs was that of John Onslow, who testified as follows:

" Q. How are they opened? A. They are opened with a rope that pulls the bolt above and one below, at the same time. Q. When the bolts are pulled what takes place? A. You have to start the door a little bit, and then the spring takes hold and helps swing the door open. Q. State whether or not it is opened quickly on to the sidewalk? A. Sometimes they are opened quick and sometimes not so quick; if the wind is blowing it is difficult, and you have to follow the door and push it along; and when there is no wind they swing freely."

On April 26, 1886, a short time before noon, the chief of the fire department being at the building on Peach street and

Statement of Facts.

about to drive home to his dinner, the doors were opened by John Allen, an employee of the fire department, to permit the chief to pass out with his wagon. At that moment, the plaintiff and her mother were passing along the sidewalk in front of the building, when the plaintiff was struck upon her ankle by one of the doors, receiving an injury which proved to be very serious. The occurrence was thus described by the plaintiff, testifying upon her own behalf:

"Opposite the doors, mother started at something and I looked up to see what it was, and saw the doors open about a foot or more—the engine house doors—and saw the horse's head right before the doors. Mother ran and I followed and the door followed me up and struck me in the ankle. . . . . Q. How did it come out; whether quickly or forcibly? A. Very quickly and with great force. Q. What, if any knowledge, had you, prior to these doors being opened at that time, that they opened out that way into the street? A. I was never aware of it. Q. You knew nothing about it? A. No, sir. Q. You were walking on the sidewalk between the building and the curbstone? A. Yes, sir. Q. And you were rather on the west side of the walk? The walk runs north and south? A. Yes, sir. Q. And you were on the western portion of the walk? A. Yes, sir. Q. Beyond the centre of the walk, to the west? A. Yes, sir. Q. When you saw the doors open? A. Yes, sir. . . . . Q. And as you came to the engine house you noticed that the doors were opened? A. We were opposite them when they opened. Q. How far did they open? A. They opened out. Q. Clear out? A. Yes, sir. . . . . Q. And you ran ten or twelve feet? A. As much as that, and perhaps more. I wouldn't be certain. Q. And then this door came and struck you? A. It struck me while I was running. . . . . Q. Where did your mother go when you ran? A. She was ahead of me. . . . . Q. Did she talk to the fireman? A. Yes, sir. She asked if they didn't know any better. Q. What did she say? A. She asked if they didn't know any better than that. Q. What did he say? A. Nothing. He had a kind of a smile or a grin on his face, was all, and he didn't say anything."

The plaintiff's mother testified as follows:

"Q. When you got up to where the fire department building

Statement of Facts.

was, tell the jury what occurred? A. When we came near the door or up by the side of the door, I saw the door open about a foot and I saw the horse there, and I saw Mr. Mosier on the wagon, and of course then I thought I must run and I ran as fast as I could. Q. Where were you when you first saw the opening of the door? A. I was right opposite the door where they open it. They opened it right before my eyes. Q. When you first saw it, the door was just going open? A. Yes, sir, perhaps a foot or so; and I saw the horse and saw Chief Mosier and I knew that he always drove fast and that I must go out of the way as fast as possible. And I started to run and she started after me, .... Q. Did you know this man Allen, who opened the door? A. No, sir. Q. Didn't you talk to him that day? A. No, sir; only when I saw she was hurt so bad, I looked back and told them if they didn't know any better than to throw the door open when people passed by. Q. That was to Allen? A. That was to both of them. I saw two men. .... Q. If they had looked out could they have seen you? A. Yes, sir. Q. They could have prevented that accident? A. Yes, sir. I should think that they ought to look, before they let those doors fly open so. Q. The doors flew open very quickly? A. Yes, sir."

At the close of the testimony for the plaintiff, the defendant's counsel moved the court, Gunnison, P. J., for a judgment of nonsuit, for the reason that no such negligence had been shown on the part of the defendant as would justify a recovery, and that no liability had been shown on the part of the city; that an employee of the fire department was not a servant of the municipality to a sufficient extent to justify the application of the doctrine of respondeat superior.

By the court: We cannot say that the mere building of this building in the way it was built was negligence, or such negligence as would subject the city to damages in this case. A building built that way, and the doors not opening at all, of course could not have caused the injury. It was not the act of the city which caused the injury. It was not its negligence in building the building as it was, or arranging the doors as they were; it was the operation of the doors, and not the construction of the building or the doors; and that opera-

Arguments.

tion of the doors, if the evidence is true, was by an employee of the fire department. That he might be liable individually under the evidence, and under the facts as shown by the plaintiff, would be unquestioned. A right of action would exist against him. But the principles which are laid down in the decisions cited by counsel for the defendant show conclusively that the city is not liable for the act of an employee of the fire department. It was his act. It was the operation of the doors, and not their construction, which caused the injury; for that reason I think this motion will have to be granted.

The court then entered a judgment of nonsuit, with leave, etc. A rule to show cause why the judgment should not be lifted having been discharged, the plaintiff took this appeal, assigning the entry of the judgment of nonsuit and the discharge of the rule to show cause why the judgment should not be lifted, for error.

*Mr. W. Benson* (with him *Mr. C. L. Baker* and *Mr. S. M. Brainerd*), for the appellant:

1. The legal question to be determined is, whether the city had a right so to construct a building, in such close proximity to the sidewalk, that its ordinary use by the city, for any purpose, was dangerous to the safety of persons lawfully passing along the sidewalk in front of it. There is perhaps no decided case just like this, but the decisions in our books abundantly sustain the principle for which we contend. A municipality is bound to keep its streets and footwalks in repair, and has no more right to create and maintain an element of danger to persons passing in front of its property than an individual would have: Allentown v. Kramer, 73 Pa. 406; Newlin Tp. v. Davis, 77 Pa. 317; Pittsburgh etc. Pass. Ry. Co. v. Pittsburgh, 80 Pa. 72; Fritsch v. Allegheny, 91 Pa. 228; Erie City v. Schwingle, 22 Pa. 385; Pittsburgh v. Grier, 22 Pa. 55.

2. The facts proved in the case clearly show that the city was guilty of negligence in constructing the building so that the doors, when opened, swung out over the sidewalk for the space of nearly six feet. That negligence rendered it liable to the plaintiff, and it cannot be relieved from liability on the

Opinion of the Court.

ground that the doors were opened by a member of the fire department, who was negligent also: Burrell Tp. v. Uncapher, 117 Pa. 353; Pittston v. Hart, 89 Pa. 389; Lower Macungie Tp. v. Merkhoffer, 71 Pa. 276; Scranton v. Catterson, 94 Pa. 202; Plymouth Tp. v. Graver, 125 Pa. 32. The court will observe that there was no alarm of fire at the time of this accident, and no emergency that can be offered as an excuse for the injury complained of. The case in this respect differs materially from all the cases relied on by the defendant.

*Mr. Joseph P. O'Brien*, for the appellee:

1. The city is not liable for the carelessness or negligence of employees of the fire department: Freeman v. Philadelphia, 7 W. N. 45; Rosenberry v. Philadelphia, 7 W. N. 558; Knight v. Philadelphia, 15 W. N. 307; Fire Insurance Patrol v. Boyd, 120 Pa. 624; Ford v. Kendall Bor. Sch. D., 121 Pa. 543. This principle is now tacitly conceded by the plaintiff. The entire substance of her case is contained in the proposition that her injury was the result of an improper and negligent construction of the building, such as to render the sidewalk in front of it unsafe. But this proposition assumes, as an established fact, the exact point that was in controversy, and that without any supporting proof.

2. There was no evidence that the building, or any part of it, was a dangerous obstruction to the sidewalk, and the testimony submitted naturally and reasonably suggests the conclusion that the doors could have been opened by the persons using them without any danger to passers by. Moreover, this is positively shown by the testimony of the plaintiff's mother. Nor is there any evidence that the building could have been otherwise constructed for the uses to which it was devoted. All of the testimony, and the inferences legitimately to be drawn therefrom, showed that the plaintiff's injury was due to the negligence of an employee of the fire department, for which the city was not responsible.

OPINION, MR. CHIEF JUSTICE PAXSON:

We do not think the court below erred in refusing to take off the nonsuit. It has been held in numerous cases that a municipal corporation is not responsible for the acts of its

policemen and firemen. In other words, the doctrine of respondeat superior does not apply in such cases. It is sufficient to refer to Knight v. City of Philadelphia, 15 W. N. 307, and Fire Insurance Patrol v. Boyd, 120 Pa. 624.

It was urged, however, that the injury of which the plaintiff complains was not the result of the negligence of the firemen, but of the manner in which the building was constructed. If this were so, it might present a different question. But the evidence does not sustain this allegation. It is true, the doors of the engine house opened outwards, and were operated by springs, which, when certain bolts were pulled, opened, or assisted in opening the doors. The case was argued upon the theory that when the bolts were pulled the springs opened the doors suddenly and with great violence. In such case, as they swept across a considerable portion of the pavement in opening, it can be readily seen that they might be a dangerous trap to injure persons passing along the said pavement. The only testimony on the part of the plaintiff upon this subject was substantially as follows: " When the bolts are pulled, you have to start the doors a little bit, and then the spring takes holt, and helps swing the door open. Sometimes they are opened quick, and sometimes not so quick. If the wind is blowing, it is difficult, and you have to follow the door, and push it along; and when there is no wind, they swing freely." As the plaintiff was nonsuited, she is entitled to all the deductions which can fairly be drawn from this evidence. Tested by this rule, however, it is not sufficient to justify a jury in finding that the doors of the engine house were defectively constructed, and dangerous to citizens using the pavement. It is evident the only object and effect of the springs was to aid the firemen in swinging open the heavy doors. It is not only possible, but probable, that on the occasion referred to, if the door was opened violently and rapidly, as contended by the plaintiff, it was the result of a push by the person who opened it. For his carelessness or negligence, the city, under all the authorities, is not liable; and we have already said there was not sufficient evidence of the faulty construction of the building to submit to the jury. We would gladly help the plaintiff, but we can only do so at the expense of sound legal principles, which are of too much value to sacrifice to the hardship of a particular case.

Judgment affirmed.