## Ferruzza *v.* Pittsburgh, Appellant.

Argued March 25, 1958. Before JONES, C. J., BELL, CHIDSEY, MUSMANNO, ARNOLD, JONES and COHEN, JJ.

*Thomas E. Barton,* Assistant City Solicitor, with him *John A. Robb,* Assistant City Solicitor, and *J. Frank McKenna, Jr.,* City Solicitor, for appellant.

*Thomas R. Eddy,* with him *Schuchert & Eddy,* for appellee.

OPINION BY MR. JUSTICE BELL, November 10, 1958:
Plaintiff, John Ferruzza, brought an action in trespass to recover for personal injuries sustained as a result of a collision between the beer truck in which he was riding and a fire truck owned and operated by the defendant, City of Pittsburgh. The jury returned two verdicts (see infra) in favor of plaintiff and against the City of Pittsburgh and the Red Star

Beverage Company, which was joined as an additional defendant by the City of Pittsburgh. The defendants filed motions for judgment non obstante veredicto and, in addition thereto, the City of Pittsburgh filed a motion for a new trial. After all of these motions were dismissed by the lower Court, the City took this appeal. Red Star Beverage Company did not appeal.

We shall first consider the motion for judgment non obstante veredicto. Since the verdict of the jury resolved conflicts in the testimony in favor of plaintiff, in considering this motion, plaintiff must be given the benefit of all the evidence which is most favorable to him together with all reasonable inferences therefrom: *Bream v. Berger,* 388 Pa. 433, 130 A. 2d 708; *Farmers' Northern Market Co. v. Gallagher,* 392 Pa. 221, 139 A. 2d 908.

The accident occurred on October 7, 1942, at approximately 4:30 P.M. at the intersection of West North Avenue (a public street 45 feet in width) and Arch Street (which is 36 feet in width) in the City of Pittsburgh. The intersection is a fairly busy one. At the time of the accident, plaintiff was riding in the front seat of a Red Star Beverage Company delivery truck which was being driven by Paul Regatuso, a fellow employee. The Red Star truck was proceeding in a westerly direction on West North Avenue at a speed between 15 and 25 miles per hour. As the truck approached the intersection of West North Avenue and Arch Street it was in a line of traffic, there being approximately four or five vehicles immediately preceding that of the plaintiff. This traffic did not stop and proceeded through the intersection on a green light. The vehicle in which plaintiff was riding similarly proceeded into the intersection on a green light, and when it had reached approximately the middle of the intersection the rear part of the truck was struck by

the City's fire truck which was proceeding in a southerly direction on Arch Street.

As the truck in which plaintiff was riding entered the intersection, plaintiff looked to his right and saw the City's fire truck when it was approximately 20 or 25 feet away from the intersection. Plaintiff testified that he then yelled a warning to Regatuso. Regatuso, a witness for plaintiff, testified that although he looked in both directions as he proceeded across Arch Street, he did not see the fire truck until the collision occurred. His testimony is obviously valueless. Plaintiff testified that the beer truck on which he was riding as a helper had the windows down; that neither at the time of the accident nor for a block away, *nor at any other time did he hear any siren or bell or other audible sound.* Plaintiff did not see any driver or fireman or any other man on the open fire truck, and if there had been a siren blowing or a bell ringing he testified that he could have heard it.

Plaintiff's testimony as to the siren or bell was contradicted by his witness Didio and by the driver and fireman of the fire truck and by three disinterested witnesses who rang or heard the siren or the bell.

The jury retired at 2 P.M. and at 3:40 P.M. they indicated that they had reached a verdict. Juror No. 1 stated that they found both defendants negligent and had decided to give the plaintiff "$15,000 plus medical expense, hospital expense (which together totaled, $874.25) [and] *all Court costs and attorney's fee.*" The Trial Judge instructed the jury that they could not include in their verdict attorney's fees and Court costs. The jury thereupon retired, and *five minutes* later returned a verdict of $25,000 against both defendants.

At common law, the City of Pittsburgh would not be liable for this accident: *Devers v. Scranton City,*

308 Pa. 13, 15, 161 A. 540; *Fire Ins. Patrol v. Boyd,* 120 Pa. 624, 15 A. 553; *Kies v. City of Erie,* 135 Pa. 144, 19 A. 942. However, by the Act of June 29, 1937, a municipality is liable for damages caused by the operator of a fire truck responding to an alarm if his conduct is of a reckless nature, i.e., shows under all the circumstances a reckless disregard of the safety of others. While it is difficult to more clearly define this test of liability, it is obvious that it requires a person seeking damages to prove a greater degree or higher grade of negligence than ordinary negligence.

In *Mansfield v. City of Philadelphia,* 352 Pa. 199, 42 A. 2d 549, the Court said (pages 200-201, 202-203) : "The law of this case is clear. A vehicle of a fire department *is exempt,** when responding to an alarm, from the restrictions of the Motor Vehicle Code of May 1, 1929, P. L. 905, regarding speed (section 1002(f)), right of way (section 1014 (b)), traffic signals (section 1026(d)), and entrance upon through highways and stop intersections (section 1016(d)). But these exemptions are conditioned upon the vehicle being operated 'with due regard for the safety of all persons using the highway', and they do not protect the driver 'from the consequences of a *reckless disregard of the safety of others',*** or 'from the consequence of an arbitrary exercise of [the] right of way.' The municipality is jointly and severally liable with the operator for damages caused by his negligence (Act of June 29, 1937, P. L. 2329, section 619), *provided such negligence is of a reckless nature*: Reilly v. Philadelphia, 328 Pa. 563, 569, 195 A. 897, 900; Williams v. Pittsburgh, 349 Pa. 430, 432, 37 A. 2d 540, 541. . . . While, as previously stated, a fire vehicle is not ordinarily limited as

---

* Italics throughout, ours.
** P. L. 905, Art. VI, §619, as amended, 75 PS §212.

to speed and is permitted to run through a red light, certainly recklessness of operation cannot be denied if, in exercising those prerogatives, *it fails to give due warning of its approach* and if the operator pays no attention whatever to the traffic which is crossing an intersecting street; moreover, he cannot be heard to say that he did not see what must have been clearly visible to him had he looked."

Was the City's driver guilty of negligence of a reckless nature? This depends upon whether the fire truck sounded its siren or rang its bell. This in turn depends—all parties agree—upon whether plaintiff's testimony that he did not hear a siren or bell was, under the circumstances here involved, sufficiently positive in form and substance to take the case to the jury.

The question of whether a statement of a witness, to wit, that he did not hear a sound or that no bell was rung, was negative or positive testimony and was or was not sufficient to take the case to the jury, in the face of strong positive affirmative testimony that a bell was rung, has vexed and perplexed the Courts. The earlier cases held that a statement by a witness that he did not hear any sound or warning was negative and insufficient to prove negligence, if there was affirmative testimony that a bell was rung or an audible sound given: *Ealy v. New York Central R. R. Co.,* 333 Pa. 471, 5 A. 2d 110; *Reilly v. Philadelphia,* 328 Pa. 563, 195 A. 897; *Miller v. Pennsylvania R. R. Co.,* 299 Pa. 63, 149 A. 85. This was subsequently modified (expressly or by implication) and the statement that he did not hear a bell rung or that it was not rung was interpreted to have the same meaning and amount to positive testimony—positive in character and substance—if the witness was in a position to hear and was *consciously* listening for a sound or warning: *Williams v. Pittsburgh,* 349 Pa. 430, 37 A. 2d 540. Cf.

*Killen v. Pennsylvania R. R. Co.,* 376 Pa. 320, 102 A. 2d 140. The question was reviewed at great length and the rule was extended in two recent cases: *Costack v. Pennsylvania R. R. Co.,* 376 Pa. 341, 102 A. 2d 127; *Kindt v. Reading Co.,* 352 Pa. 419, 43 A. 2d 145. In *Costack v. Pennsylvania R. R. Co.,* 376 Pa., supra, the Court said (pages 347-349): "As previously stated there is a veritable multitude of cases in this court dealing with the question whether mere testimony that a plaintiff or his witnesses did not hear a warning signal from an approaching train would entitle the plaintiff to a submission of his case to the jury. They may all, perhaps, be divided into two classes. The one class consists of cases holding that such 'negative' testimony, as against the 'positive', affirmative testimony of witnesses who did hear a warning signal, is but a scintilla of evidence not sufficient to make out a charge of negligence against the railroad company, which, therefore, is entitled to a directed verdict in its favor. [Citing numerous cases in a footnote]. In the other class are cases where the negative testimony was by witnesses who, although in such a position that they would have been likely to hear warnings of the approach of a train did not hear any; it was held that under such circumstances it was for the jury to pass upon the strength of such testimony even though contradicted by other witnesses, this being especially true if the witnesses were paying particular attention and actually listening for such warnings; such testimony was characterized as being of a higher grade than mere negative testimony. [Citing numerous cases in a footnote]. The question is not one merely of form of expression—whether, for example, the witness says that 'no warning was given' as distinguished from his saying that 'he heard no warning': (Kindt v. Reading Company, 352 Pa. 419, 426, 43 A. 2d 145, 149). Rather

it is whether he had acuteness of hearing, sufficient opportunity for hearing, and occasion for listening, *and whether all the other circumstances tended to show that if a warning signal had been given he would probably have heard it,* and therefore, not having heard it, he could fairly assert that no warning was given. Such are the factors which must be considered in determining whether or not so-called 'negative' testimony amounts to more than a mere scintilla of evidence and therefore entitles submission of the plaintiff's case to the jury." The Court held that under the circumstances of the case, the evidence was sufficient to take the case to the jury.

In *Kindt v. Reading Co.,* 352 Pa., supra, where two witnesses testified that no train whistle was blown, the Court held that under the situation of the parties and the circumstances of that case, such testimony was positive in both form and substance, and sufficient to take the case to the jury. The Court said (page 424) : "It is impossible to lay down any rule by which it can infallibly be determined that a witness' statement that 'no whistle was blown and no bell was rung' is of so positive a character as to support a charge of negligence, or is of such negative character as to 'amount only to a scintilla'. The question whether such testimony is 'positive' or 'negative' is, *except in clear cases,* for the jury, for the weight to be accorded to such testimony must depend on the keenness of the witness' perceptions and the circumstances under which they functioned."

Applying the aforesaid test to the facts and conditions in the instant case, the Court* is of the opinion that the testimony of the plaintiff, although contradicted as above mentioned, was sufficient to take the

---

* With the exception of the writer of this opinion.

case to the jury. The order of the Court below in dismissing the motion for judgment non obstante veredicto made by the City and by the Company is affirmed.

## New Trial

The City contends that a new trial should be granted for four reasons: (1) The testimony of John Douglas was inadmissible; (2) the verdict was against the weight of the evidence; (3) the verdict was excessive; (4) the verdict was so capricious and unjustifiable that it was a manifest abuse of discretion not to grant a new trial.

Felix Didio, a disinterested witness called on behalf of the plaintiff, testified that he was sitting on the steps of his home, which was a little more than a block from the scene of the accident. He saw the fire truck go down Arch Street and followed it to the corner where the accident occurred. He stated that the *bell was ringing* but that no siren was blowing. Didio testified that the fire truck was traveling at a rate of 35 to 40 miles an hour.

The evidence produced by the City of Pittsburgh with respect to the happening of the accident conflicted in almost all material respects with that produced by the plaintiff. Charles Lapp and W. A. Pearson, driver and fireman of the fire truck respectively, testified, inter alia, that two sirens and a bell were sounding from the time they left the firehouse until the time of the accident. Both testified that all other traffic on West North Avenue except the Red Star truck had stopped as they approached the intersection. Lapp testified that he was going 15 to 30 miles per hour.

The City also produced two disinterested witnesses. The first, Robert Duffy, testified that he was a block and a half north of West North Avenue on Arch Street, helping a friend repair an automobile, when the fire

truck came down Arch Street and passed him with the siren blowing, that the noise was very loud and that the siren continued to blow all the way down Arch Street. He also heard the bell on the fire truck. The second disinterested witness, Joseph Klancher, testified that he was driving a car southwardly on Arch Street, approaching West North Avenue, and that when he was about *50 feet from the intersection* he heard a fire truck behind him sounding its bell and siren, and he pulled over to the curb to let it pass. He further testified that the traffic on West North Avenue was at a standstill just prior to the collision.

The City also produced George J. Butler who was an employee of the City of Pittsburgh. Butler was sitting on a bench on Arch Street about a block and a half south of the intersection at which the accident occurred. He testified that when the fire alarm was sounded he saw the fire truck coming down Arch Street with the siren blowing. Although he did not notice the condition of the traffic light at the time of the accident, he stated that all other traffic on West North Avenue had stopped before the collision.

Plaintiff suffered a mild concussion, a fracture of the right tibia, a lacerated right eyelid, an abrasion of the face and a laceration of the right hand, and was hospitalized as a result of the accident for approximately five weeks. His medical and hospital expenses totaled $874.25. He suffered a loss of 50 to 75% motion in the right ankle. His wages before the accident were $25 a week; after the accident his wages were $30 a week.

It is clear that the verdict against the City was against the overwhelming weight of the evidence.

The testimony of John Douglas, who is an expert in fire equipment and in road testing the brakes on

fire trucks was admissible as to the stopping distance of a fire truck going at approximately 35 miles per hour, but his testimony that he examined the fire truck "a few days" after the accident and found no siren on the fire truck at that time, was inadmissible. In *Nestor v. George,* 354 Pa. 19, 46 A. 2d 469, this Court held that testimony showing a condition of the fare rope five days prior to the accident was *inadmissible,* and in support thereof quoted from Henry's "Pennsylvania Trial Evidence", Second Edition, §32, p. 51: "Whenever the condition of a particular place or thing at a certain time is in question, evidence of its condition at a prior or subsequent time is admissible *if accompanied by proof that it has not changed in the meanwhile."*

With respect to the City's other contentions, it is clear that the first verdict which was returned by the jury, viz., "$15,000 plus medical expense, hospital expense [and] all Court costs and attorney's fee", was undoubtedly intended to be compensation for all elements of damage—including pain and suffering, loss of wages, and impairment of earning power—except medical and hospital expenses (which together totaled only $874.25) and all Court costs and attorneys'. fees. This could not possibly be sustained as the trial Judge told the jury, since neither attorneys' fees nor Court costs were recoverable. The jury's verdict, *five minutes later,* of $25,000 was a patent method of adding attorneys' fees and Court costs by indirection and was obviously capricious, excessive and unjustifiable.

Assuming, arguendo, that a verdict in the sum of $15,874.25 would have been fair,—if such a verdict had been rendered—the present verdict of $25,000 (1) was clearly capricious, and (2) was clearly against the great weight of the evidence, and for each of these reasons cannot possibly be sustained.

While an appellate Court rarely reverses a lower Court because the verdict was against the weight of the evidence, or was excessive, or capricious, or results in a miscarriage of justice, it is our duty to do so where the action of the lower Court in dismissing a motion for a new trial constituted a clear abuse of discretion. See: *Clewell v. Pummer*, 388 Pa. 592, 131 A. 2d 375; *Costack v. Pennsylvania Railroad Company*, 376 Pa., supra; *Wargo v. Pittsburgh Railways Co.*, 376 Pa. 168, 101 A. 2d 638; *Duffy v. The Monongahela Connecting R. R. Co.*, 371 Pa. 361, 89 A. 2d 804; *Dupont v. Gallagher*, 360 Pa. 419, 62 A. 2d 28; *King v. Equitable Gas Co.*, 307 Pa. 287, 161 A. 65; *Maloy v. Rosenbaum*, 260 Pa. 466, 103 A. 882; *Dinan v. Supreme Council*, 213 Pa. 489, 62 A. 1067.

The language of Chief Justice Stern in *Costack v. Pennsylvania R. R. Co.*, 376 Pa., supra (where he granted a new trial), is particularly pertinent (page 350) : ". . . The verdict, therefore, was clearly against the weight of the evidence and the judicial remedy in such event is the granting of a new trial: MacDonald, Admrx. v. Pennsylvania R. R. Co., 348 Pa. 558, 567, 36 A. 2d 492, 497; Kindt v. Reading Company, 352 Pa. 419, 429, 43 A. 2d 145, 150. Moreover, it was especially important under the circumstances for the trial judge to charge the jury that, while the number of witnesses on either side was not controlling, it was a weighty factor which, together with the question of the interest or disinterestedness of the respective witnesses, should be given by them proper consideration: Patterson v. Pittsburgh Rwys. Co., 322 Pa. 125, 185 A. 283. The court should also have explained to the jury the relative value, from a qualitative standpoint, of the kind of 'negative' testimony given by Kunkel and the 'positive' or affirmative testimony of the defendant's witnesses as to the ringing of the bell and sounding

of the horn, and should have called their attention to the ordinary superiority of the latter type of evidence: Urias v. Pennsylvania R. R. Co., 152 Pa. 326, 328, 25 A. 566, 567; Hess v. Williamsport & North Branch R. R. Co., 181 Pa. 492, 496, 37 A. 568."

The action of the lower Court in dismissing the motion for a new trial made by the City of Pittsburgh constituted a manifest abuse of discretion and requires us to reverse the judgment and grant the City a new trial.

The Red Star Beverage Company is also entitled to a new trial even though it took no appeal: *Bergen v. Lit Brothers*, 354 Pa. 535, 47 A. 2d 671. In *Bergen v. Lit Brothers,* a verdict was rendered in favor of plaintiff in the sum of $250 against defendant Smith, $250 against defendant Bauer, and $2500 against defendant Lit Brothers. Lit Brothers moved for a new trial; plaintiff entered judgments on her verdicts against Smith and Bauer. The lower Court granted a new trial, not only as against Lit Brothers, but also, *on its own motion,* as against the individual defendants, at the same time striking off the judgments which had been entered against them. This Court, in sustaining the lower Court, said (pages 537-538): ". . . It certainly had the power—indeed, 'feeling' as it did, the duty—of awarding a new trial to Lit Brothers; apparently this is not seriously questioned. What appellants deny is its right to grant similar relief to the individual defendants in view of the fact that they had not asked for it. But *the right of a court to order a new trial of its own motion is indisputable.** Gallagher v. Blankenburg, 248 Pa. 394, 400, 94 A. 132, 134; Commonwealth v. Jones, 303 Pa. 551, 554, 154 A. 480, 481, 482; Brown v. George, 344 Pa. 399, 401, 25 A. 2d 691,

---

* See also: *Clewell v. Pummer*, 388 Pa. 592, 131 A. 2d 375.

692; Trerotola v. Philadelphia, 346 Pa. 222, 226, 29 A. 2d 788, 789; Dempsey v. First National Bank of Scranton, 353 Pa. 473, 46 A. 2d 160, 161; Gerber v. Jones, 151 Pa. Superior Ct. 489, 491, 494, 495, 30 A. 2d 534, 536, 537. And so, where there are several defendants, *if the court is of opinion that the interests of justice require it,* it may order a new trial as to all the parties on the record, *although there are some who have not complained of the verdict against them . . . .*" See also: *Miller v. Pennsylvania R. R. Co.,* 368 Pa. 507, 515-516, 84 A. 2d 200; *Nebel v. Burrelli,* 352 Pa. 70, 41 A. 2d 873; Act of May 20, 1891, P. L. 101, §2, 12 PS 1164.

The judgment in favor of plaintiff against City of Pittsburgh is reversed and a new trial is granted.

The judgment in favor of plaintiff against Red Star Beverage Company is reversed and a new trial is granted, limited however to the amount of damages to which plaintiff is entitled.

---

DISSENTING OPINION BY MR. JUSTICE MUSMANNO:

The differentiation between so-called "positive testimony" and "negative testimony" is one of the most shadowy, meaningless, abstruse, illogical, incongruous, unscientific, and bizarre distinctions known to law. And if this Court will only cease talking about it, the Bar will understand that the distinction has gone the way of many of the barnacles which have either fallen off or been scraped off the hull of the ship of American jurisprudence. The Majority Opinion says in the case at bar: "The question of whether a statement of a witness, to wit, that he did not hear a sound or that no bell was rung, was negative or positive testimony and was or was not sufficient to take the case to the jury, in the face of strong positive affirmative testimony that a bell was rung, has vexed and perplexed the Courts."

If this "question" has vexed and perplexed the Courts, it is a vexation and perplexity which this Court encourages. The effectiveness of a witness's testimony should be evaluated according to the physical opportunities he enjoyed to ascertain the facts, the trustworthiness of his senses, and his reliability as an honest man. Whether he replies No or Yes to a given question in Court has nothing to do with positiveness or negativeness. A categorical no is as positive as a shouting yes. If A asks B to lend him ten dollars and B says no, nothing can be more positive to A than that he is not going to get the ten dollars. The negativeness of the reply does not alter the positiveness of the fact that he will need to go elsewhere for the ten dollars he seeks.

If a witness is asked whether he heard the whistle of a locomotive, and he answers no, assuming he was in a position to hear the whistle if blown, it is almost fanciful to say that his testimony is negative. The Majority quotes at length from the Majority Opinion in *Costack v. Pennsylvania R. R. Co.*, 376 Pa. 341, in which this Court attempted to classify the confusion, the vexations, and the perplexities arising from the "positive" and "negative" "rule." So far as achieving any definitive principle of law from an analysis of the cases on this subject, one might as well devote his time and energies to classifying the dead leaves as they fall from the trees in the autumn, the ripples of water as they drop over a series of rapids and cascades, or the flakes of snow in an Alpine avalanche. In my dissenting opinion in the *Costack* case, I said: "The Majority Opinion asserts that there are two classes of cases on the subject under discussion. The time has come to have only one—the right one. It does not comport with sound judgment, and much less with justice, to say that an injured person may or may not recover

in a given lawsuit, depending upon whether a witness's testimony is to be considered as negative or positive, and *that* depending, in turn, upon which line of cases the adjudicating Court decides to follow."

In the case at bar the plaintiff, John Ferruzza, was injured when a truck in which he was riding (owned by Cirlingione, trading as Red Star Beverage Company), was struck by a fire truck belonging to the City of Pittsburgh. The accident occurred on October 7, 1942, at the intersection of West North Avenue and Arch Street in Pittsburgh. The Red Star truck was already in the intersection proceeding forward on a green light when the fire truck collided with vehicle's cab in which the plaintiff was sitting. The jury returned a verdict for the plaintiff in the sum of $25,000 against the City of Pittsburgh and the Red Star Beverage Company, which had been brought in as an additional defendant.

The City of Pittsburgh appealed, seeking judgment n.o.v. or a new trial. This Court has refused judgment n.o.v. but has ordered a new trial. The Majority Opinion says: "Was the City's driver guilty of negligence of a reckless nature? This depends upon whether the fire truck sounded its siren or rang its bell. This in turn depends—all parties agree—upon whether plaintiff's testimony that he did not hear a siren or bell was, under the circumstances here involved, sufficiently positive in form and substance to take the case to the jury."

It is difficult to see how the plaintiff's testimony could be more positive on this point: "Q. And did you hear any siren or bell as you approached this intersection? A. *I didn't sir.* Q. And did you hear any bell or siren when you were a block from the intersection? A. *No, sir.* Q. Did you hear any sound, siren or bell, at any time before this accident? A. *No, sir.* Q. Did

you hear any sound, siren or bell, at the time of the impact? A. *No, sir.*" (Emphasis supplied.) These answers, incidentally, were given on cross-examination.

What more could Ferruzza say to show that no audible warning signal was given by the fire truck? Moreover, he testified that if a siren had been blowing or a bell had been ringing just before the accident, he would have heard the warning.

This Court says that the plaintiff's evidence, was sufficient to take the case to the jury but that the jury's verdict was against the weight of the evidence. The plaintiff's testimony was supported by the testimony of the driver of the truck, Regatuso, and by a disinterested witness, Felix A. Didio, who testified that he heard a bell ringing but that no siren was blowing. The plaintiff also produced an expert witness on fire equipment (John Douglas) who testified that he examined the fire truck a "few days" after the accident and that "there was positively no siren on the truck when I inspected it."

The Majority Opinion says that Douglas's testimony was inadmissible. Why? The Majority cites the case of *Nestor v. George,* 354 Pa. 19, as authority, but the facts in that case were wholly different. There the defendant railway company offered to show that a fare rope was in the same condition five days *prior* to an accident that it was at the time of the accident. This Court held the offer inadmissible because there was no evidence that the condition of the rope continued until the date of the accident. Here, we are speaking not about the condition of a device (the fire siren) but about its very existence, and not before the accident but *after* the accident. The Majority quotes Henry on Trial Evidence: "Whenever the condition of a particular place or thing at a certain time is in question, evidence of its condition at a prior or subsequent

time is admissible *if accompanied by proof that it has not changed in the meanwhile.*" This, of course, is good law, but how is it authority here? How could the plaintiff show that the fire truck had not undergone some alteration after the accident? The fire truck was in the possession of the City. Once the expert testified that at the time of his inspection the fire truck had no siren, the City had the right to show, if those were the facts, that the truck did have a siren or that it had been removed for some reason. Instead of meeting Douglas's testimony head-on, it seemed the City was more concerned about showing that Douglas had no permission to inspect the truck.

The Majority says: "The evidence produced by the City of Pittsburgh with respect to the happening of the accident conflicted in almost all material respects with that produced by the plaintiff." This is not unusual. It is conflict in testimony which makes a trial, and it is the province of the jury to decide which side of the conflict predominates in convincing qualities.

Moreover, this Court has said more times than there are leaves on the largest tree in Fairmount Park in the summertime that it will not reverse a lower Court's discretion in the matter of awarding or refusing a new trial where only credibility of witnesses is involved, because the Trial Court is in a better position than an appellate court to pass upon credibility. I do not see anything in the record which justifies this Court in reversing that position in the case at bar.

In sending the case back for retrial the Majority uses the *Costack* case as an illustration of how the lower court should instruct the jury on the subject of "negative" and "positive" testimony, namely: "The court should also have explained to the jury the relative value, from a qualitative standpoint, of the kind

of '*negative*' testimony given by Kunkel and the '*positive*'. or affirmative testimony of the defendant's witnesses as to the ringing of the bell and sounding of the horn, and should have called their attention to the *ordinary superiority* of the *latter type of evidence*." (Emphasis supplied.)

It would appear that, in spite of all the vexations and perplexities which this kind of a useless and confusing differentiation has caused in the past, this Court is determined to invite more vexations and perplexities. I wish to completely disassociate myself from so illogical a procedure, and so indicate by this dissent.

I might also add that sending cases back for retrials, when there is really no question of law involved, and the jury has already passed on the facts, does not help to reduce the backlog of untried cases in Pittsburgh.