Opinion by
Watkins, J.,
This is an appeal from the entry of judgment non obstante veredicto by the Court of Common Pleas of Lackawanna County in favor of the City of Scranton, the defendant-appellee, and against Alberta Merkel, the plaintiff-appellant, after a verdict of a jury in favor of the plaintiff and against the City of Scranton.
The plaintiff on August 24, 1960 was a passenger in an automobile owned by her and driven by her son, Paul Merkel. The car was involved in a collision With a fire truck operated by firemen, employees of the City of Scranton. As a result of this collision a trespass action was instituted against the City by the plaintiff for damages to her car and personal injuries. The City of Scranton joined the plaintiff’s son, Paul Merkel, as an additional defendant. The jury returned a verdict in favor of the plaintiff in the amount of $1972.54 against both defendants. Motions were filed on behalf of the City for judgment n.o.v. and for a new trial. The court below entered judgment n.o.v. The plaintiff appealed.
The court below sets forth the facts upon which it based its disposal of this matter to be as follows: “Viewing the evidence in the light most favorable to the verdict-winner, as we are required to do in considering a motion for judgment n.o.v., Ason v. Leonhart, 402 Pa. 312 (1960), the following facts appear:
*17 “On August 24, 1960, at 8:00 p.m., Alberta Merkel and ber son, Paul Merkel, visited the home of her sister. After leaving her sister’s house, Mrs. Merkel asked her son if he would take her for a ride to Towers Discount Store (a large department store recently opened on Keyser Avenue in North Scranton) and he assented. Thereupon, with Paul Merkel at the wheel and Mrs. Merkel a passenger in the front seat, they proceeded westerly on Luzerne Street and approached the intersection of Luzerne Street and South Main Avenue, where the traffic light at the intersection was in their favor. Paul Merkel looked neither left nor right on South Main Avenue as he entered the intersection. In the meantime, a fire department truck, manned by employees of the City of Scranton, was traveling in a southerly direction on South Main Avenue in response to an alarm and, as the jury found, did not sound an audible signal as a warning to other vehicles in the vicinity. The vehicles collided in the intersection and plaintiff was injured and her automobile damaged.”
It is necessary, in view of the jury’s verdict, and our discussion herein, to have a complete picture of the physical facts and the testimony that supports the jury’s verdict. On the day in question, at about 10:00 p.m., the weather was clear when the Merkel car approached, in a westerly direction, the intersection of Luzerne Street and South Main Avenue. Luzerne Street runs east and west and Main Avenue north and south. The green light favored the oncoming Merkel car and he proceeded into the intersection and was struck by the fire truck at the rear right fender after he had crossed more than fifty per cent of the intersection. There was testimony on behalf of the plaintiff that the fire truck was traveling fifty miles per hour. The testimony of Paul Merkel was that he was traveling from 15 to 25 miles per hour.
*18 The firehouse is located ou Division Street which is not a through street but intersects with the east side of South Main Avenue, one block north of Luzerne Street. The firehouse is located about a quarter of a block west of the intersection of Division Street with South Main Avenue. The fire truck left the firehouse, made a right-hand turn into Main Avenue and continued southward to Luzerne Street where the collision occurred.
The testimony of the plaintiff was as follows: “There was no siren at all on that fire truck, if there was I could have heard it, because our windows were all down in the car, it was the 24th of August and it was a beautiful night. It was clear and there was no reason why we couldn’t have heard the siren.” Paul Merkel testified as follows: “Q. You didn’t hear any sound or — ? A. I didn’t hear nothing, nothing at all. Q. Were your windows open or closed? A. They were opened. Q. Specifically, did you hear a fire siren? A. No, sir I didn’t hear nothing. Q. If there had been a fire siren sounded, would you have heard it? . . . A. Sure, I would.”
The employees of the City of Scranton denied the speed testified to by the plaintiff and testified that a siren and a bell were sounded and rung. The strongest testimony concerning failure to sound a warning was given by a bystander, one Vincent Sacchetti, who testified that he was standing on the eastern side of South Main Avenue about three quarters of a block north of Luzerne Street or between the intersection of Division Street on the west side of South Main Avenue and the intersection of Oxford Street on the east side of South Main Avenue. Both these streets were not through streets, the one coming into South Main Avenue from the east and the other from the west. Oxford Street being south of Division Street by about one quarter of a block. He was in a position to watch *19 the fire truck and testified that he did watch it make the right-hand turn from Division Street into South Main Avenue and continued to watch it until it collided with the Merkel car at the intersection. He testified that in his opinion the fire truck was traveling 50 miles per hour. He said that the siren was sounded before the truck made the turn into South Main Avenue and no signal was given thereafter and that he was in a position where if a signal had been given he would have heard it.
Specifically he testified as follows: “Q. From the time you first saw the fire truck how many times did you hear that siren ring? A. Once. Was there any siren ringing at Luzerne Street? A. From the time on Division Street, after it made the turn and went down Main Avenue, I didn’t hear the siren at all. As it turned I heard the siren and after that I didn’t hear the siren at all. Q. By The Court: As it turned from Division Street to Main Avenue you heard the siren? A. Yes. Q. And then you didn’t hear it again? A. No. Q. By Mr. Dolphin : If the siren had rung would you have heard it? A. Yes, sir, I would. Q. What were you doing in regard to listening to that siren? A. I watched it as it went down that street and I was listening for it. Q. You didn’t hear it? A. No, sir. Q. Were you watching it all the time or part of the time? A. From the time it left Division Street until the time it hit the ear I watched it. Q. How fast was it going? A. I would say 50 miles an hour. Q. When it hit the automobile what part of the intersection did it hit it in? A. On the westerly side. Q. In other words, the Merkel car had passed over half of the street when the fire truck hit? A. Yes. Q. What part of the Merkel car did the fire truck hit? A. The right rear fender. . . . Q. By The Court: You mentioned you heard the siren but once? A. Yes, sir. Q. Did you hear a bell or any other sound emanating from the fire truck? A. No, sir.”
*20 Paul Merkel also testified that when he approached the intersection he was able to see one quarter of a block north on South Main Avenue because of an open lot on the northeast corner and did not see a fire truck approaching. He did testify that after he arrived at the intersection, with the light green, he continued into the intersection without looking to the right or left and continued looking in the direction he was traveling until the collision occurred.
The law with regard to exemptions enjoyed by fire company apparatus is clearly set forth in Mansfield v. Philadelphia, 352 Pa. 199, 42 A. 2d 549 (1945), where the Court said, beginning at page 200: “A vehicle of a fire department is exempt, when responding to an alarm, from the restrictions of the Motor Vehicle Code of May 1, 1929, P. L. 905, regarding speed (section 1002(f)), right of way (section 1014(b)), traffic signals (section 1026(d)), and entrance upon through highways and stop intersections (section 1016(d)). But these exemptions are conditioned upon the vehicle being operated ‘with due regard for the safety of all persons using the highway’, and they do not protect the driver ‘from the consequences of a reckless disregard of the safety of others’, or ‘from the consequence of an arbitrary exercise of (the) right of way’. The municipality is jointly and severally liable with the operator for damages caused by his negligence (Act of June 29, 1937, P. L. 2329, section 619), provided such negligence is of a reckless nature: (citing cases) .... While, as previously stated, a fire vehicle is not ordinarily limited as to speed and is permitted to run through a red light, certainly recklessness of operation cannot be denied if, in exercising those prerogatives, it fails to give due warning of its approach and if the operator pays no attention whatever to the traffic which is crossing an intersecting street; moreover, he cannot be heard to say that he did not see *21 what must have been clearly visible to him had he looked.”
The jury by its verdict in this case, determined under the charge of the court, that no warning of the approach of the fire truck had been given. In Ferruzza v. Pittsburgh, 394 Pa. 70, 145 A. 2d 706 (1958), where it was held that reckless operation of a fire department vehicle in responding to an alarm is established where it is shown that the operator did not give due warning of the vehicle’s approach to a highway intersection. And in that case the court discussed the evidence necessary as to warnings in order to send the case to the jury, as follows:
“Was the City’s driver guilty of negligence of a reckless nature? This depends upon whether the fire truck sounded its siren or rang its bell. This in turn depends — all parties agree — upon whether plaintiff’s testimony that he did not hear a siren or bell was, under the circumstances here involved, sufficiently positive in form and substance to take the case to the jury.
“The question of whether a statement of a witness, to wit, that he did not hear a sound or that no bell was rung, was negative or positive testimony and was or was not sufficient to take the case to the jury, in the face of strong positive affirmative testimony that a bell was rung, has vexed and perplexed the Courts. The earlier cases held that a statement by a witness that he did not hear any sound or warning was negative and insufficient to prove negligence, if there was affirmative testimony that a bell was rung or an audible sound given.” And the Court cited with approval Costack v. Pennsylvania R. R. Co., 376 Pa. 341, at page 348, 102 A. 2d 127 (1954), where the Court said: “The question is not one merely of form of expression— whether, for example, the witness says that Mo warning was given’ as distinguished from his saying that Me heard no warning’; (Kindt v. Reading Company, *22 352 Pa. 419, 426, 43 A. 2d 145, 149). Rather it is whether he had acuteness of hearing, sufficient opportunity for hearing, and occasion for listening, and whether all the other circumstances tended to show that if a warning signal had been given he would probably have heard it, and therefore, not having heard it, he could fairly assert that no warning was given. Such are the factors which must be considered in determining whether or not so-called ‘negative’ testimony amounts to more than a mere scintilla of evidence and therefore entitles submission of the plaintiff’s case to the jury.” The Court held that under the circumstances of the case, the evidence was sufficient to take the case to the jury.
We agree with Mr. Justice Musmanno, in his dissenting opinion in Ferruzza v. Pittsburgh, supra, at page 85, where he says: “The differentiation between so-called ‘positive testimony’ and ‘negative testimony’ is one of the most shadowy, meaningless, abstruse, illogical, incongruous, unscientific, and bizarre distinctions known to law.” However, it is unnecessary to discuss this differentiation in our case because the evidence was clearly positive under any definition and much stronger to go to the jury than in the Ferruzza case.
As the court below put it, on page 18: “Liability of the City of Scranton is predicated upon the failure to give due warning of the approach of the fire truck by sounding its siren or ringing its bell, which would warrant a finding by the jury that there was a reckless disregard of the safety of others under the Act of April 29, 1959, P. L. 58, Sections 623, 1002, 1014, 1015, 1016, as amended, 75 P.S. 623, 1002, 1014, 1015, 1016. Ferruzza v. Pittsburgh, 394 Pa. 70 (1958). In addition to the testimony of the Merkels, a disinterested witness, Yincent Sacchetti, testified that no audible warning was given by the fire truck for a distance *23 of one block on South Main Avenue prior to entering the intersection, and this version was apparently believed by the jury.”
The determination of the court below in granting judgment n.o.v. is based on the contention that Paul Merkel’s negligence was imputable to the plaintiff as a matter of law and consequently bars recovery. There can be no doubt that Paul Merkel was negligent and the jury so determined. And we agree with the court below, where, after citing Beam v. Pittsburgh Railways Co., 366 Pa. 360 (1951), Judge Nealon, speaking for the court en banc, said:
“Therefore, in the absence of evidence to the contrary, the negligence of the driver, Paul Merkel, would be imputable to the plaintiff, Alberta Merkel, owner of the vehicle. In this case there is no competent evidence to the contrary; indeed, the evidence strengthens the presumption that a principal and agent relationship existed. In plaintiff’s case in chief, the additional defendant was called as if on cross-examination and he testified that on the night of the accident, plaintiff wanted to see the new Towers Discount Store and asked him if he would take her there. While testimony obtained from a defendant called as if on cross-examination is not conclusive against the party calling the witness and may be rebutted by other proof, yet to the extent that it is not rebutted it is conclusively taken to be true. Rogan Estate, 404 Pa. 205 (1961). The only other testimony bearing on this point was given by plaintiff, who said that they were ‘. . . taking a ride back toward Keyser Avenue’. This was insufficient to rebut or contradict the statement of the additional defendant. Moreover, it makes no difference whether the relationship between plaintiff and additional defendant was that of principal and agent or if they were engaged in a joint enterprise, the result would be the same. Downey v. Rymorowicz, 397 Pa. 205 (1959).”
*24 However, there is another problem involved in this case that was not discussed by the court below. If this defendant did in fact impel its vehicle into the intersection without warning, the cases are unanimous that it was guilty of negligence of such a nature as to amount to reckless disregard of the safety of others, and if so, the ordinary failure to exercise due care by the driver is not a defense to this action.
The Restatement, Torts, §482, page 1261, categorically states the law to be: "... a plaintiff’s contributory negligence does not bar recovery for harm caused by the defendant’s reckless disregard for the plaintiff’s safety.” This is the general rule. The comment in the Restatement, supra, at page 1262 is interesting: “If the defendant’s conduct amounts to reckless disregard of the plaintiff’s safety as those words are defined in §500, the plaintiff is not barred from recovery by any form of contributory negligence. He is not barred from recovery by his failure to exercise reasonable vigilance, although had he done so he would have discovered the plaintiff’s reckless misconduct in time to have avoided harm therefrom. He is not barred from recovery by a failure to exercise reasonable care and competence after he knows of the defendant’s reckless misconduct and realizes the dangers involved therein. The plaintiff is not barred even by that form of negligence which is called voluntary assumption of risk. In order that the plaintiff’s conduct may bar him from recovery, it is necessary that he not only know of the defendant’s reckless conduct but also realize the gravity of the risk involved therein so that he is not only unreasonable but reckless in exposing himself to it.”
Reckless disregard of the safety of others is defined in §500 of the Restatement, supra, as follows: “The actor’s conduct is in reckless disregard of the safety of another if he intentionally does an act or fails to *25 do an act which it is his duty to the other to do, knowing or haying reason to know of facts which would lead a reasonable man to realize that the actor’s conduct not only creates an unreasonable risk of bodily harm to the other but also involves a high degree of probability that substantial harm will result to him.”
Clearly, the Pennsylvania cases in so many words have held that failure to sound a warning on heavy fire equipment catapulting itself along the public highway under special privilege as to speed, traffic warnings and rights of way fall within that definition.
As to the doctrine of the law enunciated in the Restatement, supra, no Pennsylvania cases have been decided squarely on that point. It has been discussed in dicta in many cases but no direct affirmation of the doctrine appears in Pennsylvania law. This case, on its facts and by the determination of the court below, presents the problem clearly for decision. In Pedlow v. Lippens, 351 Pa. 259, 40 A. 2d 426 (1945), the Court came close to endorsing the doctrine, by asserting, although the question of wanton negligence was not in issue, that contributory negligence in standing behind an automobile parked partly off a four-lane highway without a tail light would not bar recovery for death resulting from being struck by defendant’s automobile if defendant’s conduct was wanton and exhibited a reckless disregard for the safety of the deceased.
The jury found the defendant guilty of negligence and from the evidence and the charge of the court it was decided clearly on the ground of the reckless disregard of the safety of the plaintiff. Admitting that the driver of this car failed to exercise due care in looking both ways before entering the intersection, even with the green light in his favor, he was guilty of negligence and the jury so found, and even if imputable, under the law, to this plaintiff, such contributory negligence should not bar the recovery of this *26 plaintiff for her damages caused by the defendant’s reckless disregard of her safety.
Judgment n.o.v. removed, the verdict reinstated and judgment directed to be entered thereon.
Montgomery, J., would grant a new trial.